BUFORD v. EQUITABLE LIFE ASSUR. SOCIETY et al.

(Supreme Court, Special Term, New York County. December 6, 1905.)

1. INSURANCE—LIFE POLICY—HOLDER'S—RIGHT TO SHARE IN ENTIRE SURPLUS.
    A holder of a life policy which entitles him to "participation in profits" is not entitled as a matter of right to his equitable share of the surplus over the legal reserve provided for by Insurance Law, Laws 1892, p. 1968, c. 690, §§ 84, 86, though the charter of the insurer provides for the accumulation of earnings over and above dividends, losses, and expenses, and for the crediting of each policy holder with an equitable share of the surplus, after deducting a sufficient amount to cover outstanding risks, either in reduction of premiums or for the purchase of additional insurance.

2. SAME—ACTION—ACCOUNTING.
    Where a policy holder entitled to participation in the profits is entitled to a share in a greater proportion of the surplus than has been distributed by the insurer, the amount to which he is entitled can be ascertained only by an accounting which under the express provisions of Insurance Law, Laws 1892, p. 1958, c. 690, § 56, may not be decreed at the suit of a policy holder.

3. SAME—PARTIES.
    Where a policy holder, in an action to compel the insurer to credit him with his share in the surplus after providing for the legal reserve, accepts the insurer's statement showing the surplus, the officers of the insurer are not proper parties, though the complaint charges them with wastefulness and wrongdoing.

Action by one Buford against the Equitable Life Assurance Society and others. Heard on demurrers to complaint. Demurrers sustained.

A. S. Bacon, for plaintiff.
· Wallace McFarlane, for defendants.

SCOTT, J. The plaintiff is insured in the defendant society by a policy issued in 1871 in favor of his wife and children. His policy is what is termed a "plain life policy," without any of the peculiar features to be found in policies of later dates, which have been involved in the adjudicated cases to which reference will hereafter be made. It assures the life of the plaintiff in the amount of $1,000, "with participation in profits," and this sum the society agrees to pay upon plaintiff's death (if the policy be then in force) to the persons named therein. The complaint is aptly described by its draughtsman as "very largely

a plagiarism." In other words, it is an unsymmetrical mosaic of unrelated extracts from statutes and excerpts from judicial opinions cemented together by generalizations of fact and statements of the pleader's views as to the law. The demurrers, upon which the action now comes before the court, are urged, not to the form of the complaint, but to the cause or causes of action sought to be set up. It will not be necessary, therefore, to attempt to analyze the complaint, or to separate the revelant and well-pleaded facts from the irrelevant and ill-pleaded.

The plaintiff's grievance is that there has not been credited upon his policy in the year 1904 so much of the accumulated surplus of the defendant society as should have been credited thereon. He shows that he has fulfilled all the obligations imposed upon him by his policy; that there has annually been credited upon his policy certain profits, by way of dividends, which have decreased his premium payments, such sums so credited amounting in each year from 1898 to 1904, inclusive, to the sum of $13; that the assets and liabilities of the society on the 31st of December, 1904, were as is shown by a table inserted in the complaint, the significant features of which, for the purposes of this action are that the "legal reserve required by law" amounted to $327,738,358, that the "surplus above said legal reserve" amounted to $80,794,269.21, and the sum paid by way of dividends to policy holders in the year 1904 amounted to $6,001,906.51. His contention is that it was the duty of the defendant society to credit or to pay by way of dividends to its policy holders its entire surplus over and above the "legal reserve required by law," and that, instead of paying or crediting only six million and odd dollars, it should have credited or paid that sum and the amount described as "surplus above the legal reserve"; or, in other words, that, instead of distributing to its policy holders $6,001,906.51, it should have distributed $86,796,175.72, and that there should be credited upon plaintiff's policy, instead of $13, that proportion of $86,796,175.72 which $13, the amount actually credited thereon, bears to $6,001,906.51, the whole amount actually credited or distributed to policy holders.

The plaintiff urges, by way of argument, that since he is willing to accept the society's own statement of the amount of its legal reserve, and its surplus above said legal reserve, and is also willing to accept the ratio, or principle, adopted by the society in apportioning to his policy the proportion which it did credit of the six million and odd dollars actually distributed, the determination of the amount to which he is entitled of the whole surplus involves merely a simple mathematical computation, and consequently that the court can award to him the relief demanded without the necessity of a decree providing for an accounting of the affairs of the defendant society, which it is conceded could not be made in this action. Chapter 400, p. 758, Laws 1890, now section 56 of chapter 690, p. 1958, Laws of 1892, known as the "Insurance Law." The act cited forces plaintiff to take the position that the defendant society is bound to distribute to its policy holders its whole surplus over the legal reserve which it is by law required to maintain. It forbids the granting or entry of any order, judgment, or decree providing for an accounting of the affairs of a domestic insurance corpora-

tion otherwise than upon the application of the Attorney General. Unless the policy holders are entitled to the whole surplus over the legal reserve, they are only entitled either to such amount as the society shall deem it prudent to distribute or to such amount as a court of equity may determine should be distributed. It is clear that such a determination could only be made after the ascertainment of a great number of facts, such as could only be ascertained by an accounting, or a proceeding in the nature of an accounting.

The principal question suggested by this complaint, therefore, is whether or not the policy holders of the defendant society are entitled as a matter of strict legal right to the proportionate distribution of the entire surplus of the society over and above the legal reserve required by law. A policy holder and the company by which he is insured bear to each other only the relation of two contracting parties, and the policy constitutes a contract between them. Uhlman v. N. Y. Life Ins. Co., 109 N. Y. 421, 17 N. E. 363, 4 Am. St. Rep. 482. The plaintiff's policy entitles him to "participation in profits," but makes no agreement in terms as to the extent of such participation, or even that it shall be ratably with the participation of any other policy holder or class of policy holders. The plaintiff, however, insists that the charter of the defendant society must be read into the contract, and that, if so read, it will sustain his contention. Assuming, without deciding, that the charter may be so read into the contract, it falls short of sustaining the plaintiff's position. It provides that the holders of the capital stock may receive as semiannual dividend not to exceed 3½ per cent., and that the earnings and receipts of said company, over and above the dividends, losses, and expenses, shall be accumulated. Article 3. It further provides that the insurance business of the company shall be conducted upon the mutual plan, and that the officers of the company shall periodically cause a balance to be struck of the affairs of the company which shall exhibit its assets and liabilities, both present and contingent, after deducting a sufficient amount to cover all outstanding risks and other obligations. Each policy holder shall be credited with an equitable share of the said surplus, to be applied to the purchase of additional insurance or to the reduction of premiums. Article 6. The plaintiff's reading of this article is that the "sufficient amount to cover all outstanding risks and other obligations" means the same thing as the "legal reserve required by law" shown in the statement of the society's financial standing incorporated into the complaint and admitted by the demurrer. The legal reserve required to be maintained by every life insurance company is ascertained upon rules laid down by statute. Sections 84, 86, Insurance Law. The directors and officers of the company have no discretion to exercise concerning it. It assumes as factors for its computation a valuation of the assets of the corporation, the nature and extent of its outstanding policies, a specified experience table of mortality, and a stated rate of interest. It may be said to represent the minimum sum necessary to have in hand to avoid the imputation of insolvency. The amount to be set aside under the defendant's charter to cover all outstanding risks and other obligations is left to the determination of the officers of the company. Doubtless their calculation would take into account the same factors prescribed by statute for the

ascertainment of the legal reserve, but it is quite conceivable that additional considerations might properly be given weight to. There is nothing in the statute which says that no more surplus shall be retained than what is denominated the "legal reserve." There is nothing in the charter which would justify a belief that, when its framers provided for setting aside a portion of the surplus to meet existent and prospective claims, they had in mind what is now known as the "statutory legal reserve," or that they intended to limit the officers to setting apart that amount, and no more. As has already been said, the exact legal reserve marks the line of solvency. It is easy to see that securities might decrease in value, that the obtainable rate of interest might fall below the legal standard, and that for a period the mortality among policy holders might exceed the probable amount indicated for that period by the experience tables. Any one of these happenings might, if only the legal reserve had been retained, force the company below the line of solvency into insolvency. As was well said by the learned and experienced judge who wrote for the Court of Appeals in Greef v. Equitable Life Assur. Soc., 160 N. Y. 19, 54 N. E. 712, 46 L. R. A. 288, 73 Am. St. Rep. 659 :

"The policy holder is to be credited only with an equitable share of such surplus, which must, we think, be regarded as such a share as might, with due regard to the safety of all its policy holders, the security of its business, and in the exercise of a proper discretion, be thus credited. The adoption of principles or methods for the distribution of the surplus by which it was all distributed each year would not only place in jeopardy every existing policy, but its tendency would be to prevent any increase of its business by obtaining new policies and thus diminish its future receipts. * * * No prudent person would be inclined to take a policy in a company which had so improvidently conducted its affairs that it only retained a fund barely sufficient to pay its present liabilities, and therefore was in a position where any change by the reduction of interest upon or depreciation in the value of its securities, or any increase in mortality, would render it insolvent and subject to be placed in the hands of a receiver."

It is true that the policy before the court in the case in which these words were written differed in an important particular from the policy now under consideration. But the words above quoted were written not with reference to any particular policy, but with reference to the identical clause in the charter of the defendant society upon which the plaintiff now relies, and are as applicable to the present case as they were to the one then under consideration. It must, I think, be held that the officers of the society were not limited by the charter to what is now known as the "legal reserve" in determining how much of the accumulated surplus should be retained and set aside to "cover all outstanding risks and other obligations." The amount to be thus set aside is determinable, in the first instance at least, by the officers of the company.

Whether this court has power to review the exercise of that discretion and under what circumstances and to what extent it should do so are questions which do not arise here, for the plaintiff's case rests upon the proposition that the officers of the society have no discretionary power to set apart and retain any portion of the surplus over the strict legal reserve. The officers in the year 1904 exercised the discretion vested in them by the charter by applying some $6,000,000 to be credited as dividends upon outstanding policies. To determine whether they

should have applied more, and, if so, how much, would necessarily involve an accounting of the business and affairs of the company, and a decree for such an accounting cannot be made in an action by a policy holder. The case of Hackett v. Equitable Life Assur. Soc., 50 App. Div. 266, 63 N. Y. Supp. 1092, much relied upon by the plaintiff, is not in point. It was an action at law upon a matured obligation, in which the complaint alleged, and the demurrer admitted, that a precise, definite sum was due to the plaintiff. As to another sum, also claimed to be due as a distributive share of the surplus, the Appellate Division distinctly held that no recovery could be had if it should be found that the ascertainment of the amount would involve an accounting. I am, therefore, of opinion, so far as regards the cause of action attempted to be stated against the defendant society, that this action cannot be maintained, because, in the first place, the plaintiff is not entitled as a matter of strict right to have credited to his policy a proportionate amount of the whole surplus over the "legal reserve required by law," and, secondly, because, if he is entitled to have so credited any greater proportion of such surplus than has already been credited, the amount to which he is so entitled could, from the very nature of the case, be ascertained only by an accounting, which may not be decreed at the suit of a policy holder.

The plaintiff has joined as defendants with the society, all of its officers, and directors, and they also severally demur to the complaint. Why they were deemed to be necessary or even proper parties to the action is not apparent from the face of the complaint, and is not attempted to be explained on the briefs of counsel. Certainly no cause of action is stated against them, and their presence is not necessary to the relief which the plaintiff seeks against the society. He sues upon a contract in which the society, and not its officers as individuals, is the other contracting party. His judgment, if he should obtain one, would run against the society, and obedience to it, if resisted, would be enforced by action against those who are its officers at that time, who might be quite different persons from those who were officers when the action was commenced. It is true that the complaint contains general charges of extravagance, wastefulness, and wrongdoing against the defendant officers, but those charges are not supported by allegations of specific facts, and, even if they were, they would be irrelevant to the plaintiff's asserted cause of action against the defendant society. If the officers were extravagant and wasteful, it may be that the apparent surplus of the society is less than it should be. But the plaintiff makes no such claim. On the contrary, he accepts the surplus as it appears on the society's statement as the sum in which he is entitled to participation, and it is therefore immaterial, so far as his cause of action is concerned, to consider whether the surplus should be greater than it appears to be. So far as concerns the cause of action against the society, therefore, no cause of action is stated against the officers individually, and they are neither necessary nor proper parties. I am unable to find that any other cause of action is stated against them, and, even if one could be spelled out of the complaint, it would be bad for duplicity. Of course, the prayer that, if the officers of the society refuse to carry out the judgment of the court, they be removed and others be appointed

in their place, asks for no relief which any court would incorporate into a decree.    Whatever coercive measures might be necessary to enforce a decree will be determined after refusal to comply, and not in anticipation of such refusal.

It follows that the demurrers must be sustained and the complaint dismissed, with costs to each defendant separately demurring, but one bill of costs, however, being taxed in favor of all defendants appearing by the same attorney, with leave to the plaintiff to amend his complaint within 20 days upon payment of costs.