SYLVESTER P. PIERCE *vs.* EQUITABLE LIFE. ASSURANCE
SOCIETY.

Suffolk.   November 17, 18, 1886. — September 17, 1887.

An insurance company, incorporated in another State, issued there to A., who was
a resident of that State, a policy of insurance upon his life for a certain sum
payable on his death to him, his executors, administrators, or assigns.   The
policy was known as a tontine policy on the savings fund insurance plan, and
was to continue as such for the term of ten years, if A. should live so long.   If
a person insured under such a policy should die during the tontine period, his
estate would receive only the amount of his policy; and if he should fail, during
the tontine term, to pay the premiums on his policy, it would be forfeited.
Policies of this character were kept in classes according to their tontine periods,
and, while the funds of each class were not kept separate, distinct accounts
were kept with each class, showing the amount due upon each policy at the ex-
piration of the tontine term.   At the expiration of such term, it was provided
that " all the surplus or profits derived from such policies on the tontine savings
fund insurance plan as shall cease to be in force before the completion of their
respective tontine dividend periods shall be apportioned equitably among such
policies as shall complete their tontine dividend periods "   The holder of the
policy then had the option " to withdraw in cash the policy's entire share of the
assets, whether in the reserve fund proper or in the accumulated surplus," or to
use this share in various modes prescribed by the policy for the procurement of
additional insurance, or by the purchase of an annuity for the payment of the
premiums thereafter becoming due on his policy.   The " reserve fund proper "
and " accumulated surplus " were made up of the dividends withheld on the
premiums of the class during the tontine term, by reason of forfeiture by death
or non-payment of premiums within the term.   The corporation had a place of
business in this Commonwealth, and an agent to receive service of process, but
its books and papers were kept in the other State.   A. brought a bill in equity in
this Commonwealth against the corporation, after the expiration of the tontine
period of his policy, for an account.   The corporation put in a general appear-
ance, and an answer to the merits, and objected to the jurisdiction of the court
for the first time at a hearing on the merits.   *Held*, that the defendant had waived
any objection to the jurisdiction of the court; that A. was a creditor, and not
a member, of the corporation; and that the bill could be maintained without
joining the other policy holders of the plaintiff's class.

By the law of the State of New York, as shown by its judicial decisions, an insur-
ance company which by a policy agrees that the surplus or profits derived from
policies on the tontine savings fund assurance plan that shall cease to be in
force before the completion of their tontine dividend periods shall be appor-
tioned equitably among such policies as shall complete their tontine dividend
periods, does not hold such surplus or profits as a trust.

BILL IN EQUITY, filed October 13, 1884, by the holder of a
policy of life insurance issued by the defendant corporation,

alleging that by the terms of the policy the defendant had constituted itself his trustee for his share of all accumulations of a certain fund, and praying for an account.    Hearing before *Holmes*, J., who reported the case for the consideration-of the full court.    The facts appear in the opinion.

*E. P. Usher*, for the plaintiff.

*J. Lowell & R. M. Morse, Jr.*, for the defendant.

DEVENS, J.    The policy of life insurance in regard to which the plaintiff seeks that the defendant shall render an account, complaining that the defendant has not apportioned to him the share of reserve and profits to which he is entitled, was made in New York; and the plaintiff is, and was at the time of bringing this bill, a resident of that State, under the laws of which the defendant is incorporated.    Had the defendant, instead of appearing generally, objected originally that, even if an account should be taken, it ought not to be held to answer here to the plaintiff, in view of these facts and the great inconvenience involved in taking such an account at a distance from the State in which its voluminous books and papers are properly kept, such objection would have been worthy of serious consideration. Even if the plaintiff is entitled to an account, he might, under such circumstances, be compelled to seek it where it can most appropriately, as well as most conveniently, be rendered.    The objection which the defendant makes to the jurisdiction of the court appears to have been taken for the first time when the case came on to be heard on its merits before a single justice. In the opinion of a majority of the court, any objection to the exercise of the jurisdiction of this court founded on the facts above set forth must be deemed to have been waived by the general appearance, pleading to the merits, and the delay in taking the objection.

The principal characteristics of the policy on which the controversy arises are these.    It was for the sum of $10,000, payable, on the decease of the plaintiff, to him, his executors, administrators, or assigns, and was for the term of his life.    It was known as a tontine policy on the savings insurance plan, and was to continue as such for the term of ten years, if the plaintiff should live so long.    If the holder of the policy died during the tontine period, which expired on March 18, 1883, his estate would not receive

any benefit from the dividends which ordinarily are made on life assurance policies annually or at stated periods, which dividends consist of the surplus of premiums after deducting the cost of insurance and the computed reserve, these being then held by the company for the benefit of the other policy holders, and forfeited by him. His estate would receive only the amount of his policy. If the holder of the policy also should fail during this tontine term to keep up his policy by payment of the premiums, it would be forfeited. Policies of this character are kept in classes of ten, fifteen, or twenty years, according to their tontine periods, and, while the funds of each class are not kept separate, distinct accounts are kept with each class; so as to show the amount to which it is entitled, and by this means the amount due upon each policy at the expiration of its tontine term. At the expiration of ten years, if such be the term, or at the completion of the tontine dividend period, it is provided that " all surplus or profits derived from such policies on the tontine savings fund assurance plan as shall cease to be in force before the completion of their respective tontine dividend periods shall be apportioned equitably among such policies as shall complete their tontine dividend periods." On March 18, 1883, the policy not having terminated, the plaintiff had the option " first to withdraw in cash this policy's entire share of the assets, whether in the reserve fund proper or in the accumulated surplus ; secondly, to convert the same into a paid-up policy for an equivalent amount ; . . . . or, thirdly, to continue the assurance for the original amount, and apply the entire tontine dividend to the purchase of an annuity to reduce the subsequent premiums falling due upon this policy."

The "reserve fund proper " and "accumulated surplus " are made up of the dividends which have been withheld on the premiums of the class during ten years, the dividends thus withheld from those who have died within the ten years being forfeited for the benefit of the class to which their policy belonged, and also all payments made by and dividends withheld from those who have forfeited their policies by non-payment of premiums.

It is the contention of the defendant that the plaintiff is bound by the apportionment made by its officers in the discharge

of their duties, unless it shall be shown at least that they did not act in the exercise of an honest discretion and in good faith. We find no words in the policy indicating that the decision of the defendant is to be conclusive; and the words by which the defendant agrees "equitably" to apportion to the plaintiff's policy its share of the profits bind the defendant to make the apportionment, and imply that, in any proper proceeding, it may be inquired whether it has fulfilled this part of its contract.

That the bill brought by the plaintiff cannot be maintained on the ground that he is the beneficiary of. a trust fund held by the defendant, which is one of the grounds upon which an account is often ordered, and upon which theory the bill is based, is, we think, reasonably clear. By the New York law, which must govern the construction of a contract made between New York parties to be performed in that State, it has been found as a fact by the judge who presided that the policy issued to the plaintiff did not create a trust. This finding is fully sustained by the evidence from the decisions of the tribunals of that State. *Taylor* v. *Charter Oak Ins. Co.* 9 Daly, 489. *Hencken* v. *United States Ins. Co.* 11 Daly, 282; *S. C.* 98 N. Y. 627. *Verplanck* v. *Mercantile Ins. Co.* 1 Edw. Ch. 84. *People* v. *Security Ins. Co.* 78 N. Y. 114. *Bewley* v. *Equitable Assurance Society*, 61 How. Pr. 344. *Cohen* v. *New York Ins. Co.* 50 N. Y. 610. *St. John* v. *American Ins. Co.* 3 Kern. 31. *Uhlmann* v. *New York Ins. Co.* 13 Daly, 47. While the prayers in the plaintiff's bill have been made upon the theory that there was a trust fund held by the defendant for the benefit of the plaintiff, with others, as a holder of a ten years' tontine policy, no objection is pressed by reason of the form of the bill. We proceed to consider, therefore, whether, upon any other ground than that strictly of trust, the bill may be maintained for an account.

Our statute gives jurisdiction in equity upon accounts "when the nature of the account is such that it cannot be conveniently and properly adjusted and settled in an action at law." Pub. Sts. *c.* 151, § 2, *cl.* 10. Even if the amounts kept back from the plaintiff and those of his class of policy holders, by the retention of those dividends which would otherwise have been received,

or of those sums accruing from the forfeiture of policies either in whole or in part, do not constitute a trust fund, or place the defendant in a strictly fiduciary capacity, the defendant was bound to keep accurate accounts of them, and of all interest and profit thereon, if any. All the facts were entirely within its own knowledge, and it is only thus that it can be determined what equitably should be apportioned to the plaintiff.

It is said that the plaintiff has a sufficient remedy at common law; that he can bring his action at law; and that, upon proper interrogatories addressed to the defendant, all the information necessary for the proper adjustment of the account may be obtained. But even if an action at law could be maintained, where an account is complicated so that a full examination and settlement of previous accounts, transactions, or methods of business are necessary, and where the whole matter is entirely within the knowledge of the defendant, it cannot so conveniently or accurately be investigated at common law as in equity. Even if a trial by jury be claimed and allowed, the court might, in a suit in equity, so mould the issues and direct the course of the trial as to avoid many of the difficulties attending a trial at common law. *Hallett* v. *Cumston*, 110 Mass. 32. It was thus held, in the case cited, that one who was not a partner, but was entitled to share in the net profits of a business, might maintain a bill for an account against a partnership which necessarily involved an examination of its transactions, and of its whole course and methods of conducting business. In *Massachusetts . General Hospital* v. *State Assurance Co.* 4 Gray, 227, it was said that the plaintiff might properly maintain a bill for an account of the net profits arising from the insurance of lives made by it, one third of which the defendant was by law bound to pay the plaintiff.

That the accounts are singularly complicated, and that the method by which the value of the share of the plaintiff which he has obtained by full payment of his premiums and completion of his tontine period is ascertained is one of much complexity and difficulty in its application, appear from the evidence reported. A court of equity is the appropriate tribunal for dealing with such an account, and the defendant is fairly bound to produce an account from the data in its

possession which shall show that it has complied with its promise equitably to apportion to the plaintiff his share in the accumulations made through the operation of the tontine provisions in his policy.

Nor do we perceive that it is necessary to join any more of this class of policy holders in the bill, or that the bill should be brought on their behalf. It appears by the answer of the defendant, and also by the evidence, that all the policy holders of the class to which the plaintiff belonged have been settled with, and that they have received the amount apportioned to them by the defendant corporation. But even if it did not so appear, the plaintiff made his individual contract with the defendant; if others have similar contracts depending on similar states of fact, they in no way affect his contract; he has no demand upon any one other than the defendant; and nothing that he will receive from the defendant will in any way affect the claims of others.

It is contended that the apportionment of the reserve or accumulated profits to be made at the conclusion of the tontine dividend period is but the declaration of a dividend; that the court will not interfere with the declaration of a dividend, even by a domestic corporation, it being a question solely for its directors, or other proper officers, whether any dividend shall be made, and if so, of what amount; and that, until this is made, no stockholder has any rights in any profits that have been made, or assets that might be divided. Conceding this to be the general law, the amount to be apportioned, or which the plaintiff is entitled to have apportioned, is not a dividend, in the limited sense in which the word is used in its application to dividends to stockholders. Between stockholders and the corporation of which they are members no relation of debtor or creditor ordinarily exists, nor does any arise until a dividend has been declared. The affairs of the corporation are managed by those whom the stockholders elect as officers, and by this administration of affairs they are bound. The plaintiff is not a member of the corporation, but its creditor, who has contracted with it. At the end of a fixed period, having complied with the contract on his own behalf and made the payments required, he is entitled to have apportioned to him his share of a certain

fund, to be computed. The defendant has no right to withhold it, as a corporation may withhold profits from a stockholder. This share, or its equivalent in value, is the plaintiff's own property, and not that of the defendant corporation.

Nor is it important that the sum to be computed as belonging to the class, and from which the apportionment to the plaintiff's policy is to be made, is constituted partially of dividends which but for the tontine contract would have been previously paid upon the policy. It may be that the amount of the dividends annually, or at other stated intervals, distributed to policy holders could be absolutely determined by the officers of the corporation. If this is so, the plaintiff would still have a right to an account, and to ascertain whether the dividends reserved under his contract were proportionally the same as those declared on other life insurance policies, having relation to their different circumstances; or at least to ascertain what were the amounts reserved as dividends to be passed to the credit of the fund when it should be computed, if it had no actual existence. In our view of the case, if the defendant were a domestic corporation, there would be a right on the part of the plaintiff to have an account taken, and to ascertain thereby whether a fair apportionment had been made. If the defendant had kept no account, if it had no means of furnishing one, or showing whether it had dealt justly or unjustly with the plaintiff, it should be answerable for the injury which it had occasioned by its neglect to do what the contract implies it would do.

The defendant is, however, a foreign corporation; and it is urged that this court ought not to take jurisdiction of the case, if it were possible so to do, and that practically it is impossible for it to effect justice between the parties.

That it is a matter of grave inconvenience to the defendant to be held to account here, may be conceded. That, if the objection had been promptly taken that the plaintiff was a resident of New York as well as the defendant, it would have received serious consideration, we have heretofore suggested. *Smith* v. *Mutual Ins. Co.* 14 Allen, 336. But we find no inconvenience that is insuperable; the defendant has an established place of business in this Commonwealth, and an agent to receive service of lawful process. It may be presumed that it anticipates that the profits

of the business will compensate for the inconvenience of being held to answer, and in a proper case to account, in a State other than that to which it owes its corporate existence. It is true that we cannot bring the officers, or the books, or the assets, of this corporation within our jurisdiction, but the corporation is itself lawfully before us. We shall not assume that it will neglect any order that we may pass, nor indicate how such order may be enforced, or, if it cannot be enforced, how such proceedings may be had that the plaintiff may be indemnified for the violation of the contract made with him.

It is further objected that the case requires us to exercise a jurisdiction over the corporation in its corporate functions, in the matter of its internal economy, and in the relations existing between it and its policy holders. The statute under which this corporation is subjected to the service of process does not, it is true, necessarily bring the subject matter of the suit, or the remedy sought, within the jurisdiction of this court; nor do the rights and liabilities of parties under local laws necessarily follow them into other jurisdictions. *Smith* v. *Mutual Ins. Co.*, *ubi supra*. Did the inquiry before us concern the relation between the defendant corporation and its stockholders, we could not undertake to pass upon or determine it. *New Haven Horse Nail Co.* v. *Linden Spring Co.* 142 Mass. 349. Such an inquiry is to be determined by the local tribunal. Were the case such that we were called upon to pass any order directing or controlling the corporation in the exercise of its corporate duties, we have no such jurisdiction as would enable us to do it. The subject matter would not be within our province.

But, in the case at bar, the plaintiff is a creditor, and not a member, of the corporation. He has a contract with it which he contends the corporation has not fairly performed. There is no question of its internal economy involved, as where the relations between its members and the corporation are concerned. If it has adopted any method of conducting its business inconsistent with the due performance of its contract, such a method of administration will not deprive the plaintiff of any rights. It can no more refuse to account than could an individual to whom the plaintiff entrusted his moneys on any similar contract. In dealing with the plaintiff the corporation dealt with

an outside person, and only the relation which it bears to such person, claiming to be its creditor, is here involved.

The question whether, if the defendant is to account, on what principles it shall do so, or whether, if the case is submitted to a master, it shall be so submitted by an order which shall direct him how the account shall be taken, have not been discussed, and are not considered. It may be that fuller evidence may be required than has yet been taken before they can be disposed of.                                        *Decree for an account.*