### Anna Romer v. Equitable Life Assurance Co.

1. STATUTES—*Application of Section 14 of the Act to Organize and Regulate the Business of Life Insurance.*—Section fourteen of the act to regulate the business of life insurance, approved March 25, 1869 (Hurd's R. S. 1055, Sec. 14), providing that life insurance companies which do business on the principle of mutual insurance, or the members of which are entitled to share in the surplus funds, may make distribution of such surplus as they have accumulated, annually, or once in two, three, four or five years, as the directors may from time to time determine, has no application to life insurance companies which do business on the tontine savings fund plan.

2. TONTINE INSURANCE—*Definition.*—Tontine insurance is described as a system of insurance which, under various forms, is based upon the idea of a loan or investment for the benefit of a number of persons, the income, at the first, being divided among all, and the shares of members who die passing, not to their own legal representatives, but to increase the interest of the surviving members, until, at last, after the number of members has gradually diminished by successive deaths. the last survivor takes the whole income, or, if such be the terms agreed upon, the whole principal.

Assumpsit, on a policy of life insurance. Error to the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Affirmed. Opinion filed July 2, 1902.

EDWARD J. JUDD and ALBERT E. WILSON, attorneys for plaintiff in error.

L. C. KRAUTHOFF and PECK, MILLER & STARR, attorneys for defendant in error.

MR. JUSTICE SHEPARD delivered the opinion of the court.

This is a writ of error sued out to reverse an order of the court below sustaining a demurrer to appellant's declaration and giving judgment against her for costs.

The vital question in the case is, whether section 14 of the life insurance act applies to the plan or principle of insurance contemplated and in fact effected by the policy here involved. Said section is as follows:

"Life insurance companies doing business in this State, which do business upon the principle of mutual insurance, or the members of which are entitled to share in the surplus funds thereof. may make distribution of such surplus as they have accumulated, annually, or once in two, three, four or five years, as the directors thereof may from time to time determine. In determining the amount of the surplus to be distributed, there shall be reserved an amount not less than the aggregate net value of all outstanding policies, said value being computed by the combined experience or actuary rate of mortality, with interest not exceeding four per cent." Hurd's Ed. R. S. 1899, Sec. 194, Chap. 63.

It is only to those companies which do business upon the principle of mutual insurance, or the members of which are entitled to share in the surplus funds thereof, that the sec-

tion has application. We do not think it has any application to the insurance effected by the policy in question. That policy was most clearly not issued as a mutual insurance policy, nor are the members entitled to share in the surplus funds which may accumulate thereunder, within the meaning of the statute. There is no contract, in the policy in question, upon the principle of mutual insurance. The policy on its face was declared to be issued on the tontine savings fund plan, the provisions and requirements of which (among others), are indorsed on the back of the policy, as shown by the declaration, viz.:

"1. That this policy is issued under the tontine savings fund plan, the particulars of which are as follows:

2. That the tontine dividend period in this policy shall be completed on the 22d day of March, in the year 1899.

3. That no dividend shall be allowed or paid from this policy unless the person whose life is hereby assured shall survive the completion of its tontine dividend period, as aforesaid, and unless this policy shall be then in force.

4. That all surplus or profit derived from such policies on the tontine saving fund plan as shall not be in force at the date of the completion of their respective tontine dividend periods shall be apportioned equitably among such policies as shall complete their tontine dividend periods.

6. That previous to the completion of its tontine dividend period this policy can have no surrender value in cash or in a paid-up policy.

12. (In part.) All premiums are considered payable annually in advance. * * * And if any premium or installment of a premium on this policy shall not be paid when due, this policy shall be void; and no credit for surplus accumulated on this policy shall be deemed applicable to the payment of any premium."

The policy was issued to Maximilian Romer March 25, 1884, for $3,000, and was payable at his death to his wife, the plaintiff in error. The tontine period expired March 22, 1899. The premiums were payable semi-annually. Maximilian Romer died April 17, 1900. Plaintiff's declaration averred the payment of the required thirty premiums, twenty-eight of which were paid in cash, and the two final payments by the withholding of certain sums by defendant

which exceeded in amount the sum required to satisfy the two premiums (that were not paid in cash), and which sums, it was averred, were due and payable to the plaintiff. In other words, plaintiff claimed that the accumulated reserve amounted to more than sufficient to pay the two premiums, and was due her at the time the two premiums became payable, and should have been applied for that purpose. But instead of making the application, the defendant declared the policy forfeited.

Tontine insurance is described as "a system of insurance which under various forms is based upon the idea of a loan or investment of property for the benefit of a number of persons, the income, at first, being divided among all, and the shares of members who die passing, not to their own legal representatives, but to increase the interest of the surviving members, until, at last, after the number of members has gradually diminished by successive deaths, the last survivor takes the whole income, or, if such be the terms agreed upon, the whole principal." (Bouvier's Law Dictionary, last edition, 1897, title, Insurance.) In the tontine system of insurance any division of the surplus is effected only at the end of the time for which insurance is taken, and then only upon those policies whose holders survive, and who have paid their premiums during the entire tontine period. Simons v. New York Life Ins. Co., 38 Hun, 309.

In the case last cited, the court said *inter alia :*

"This policy is a policy of insurance on the life of plaintiff's husband, payable at his death if the annual premiums have been paid and the policy is in force at that time. So far as that contract of insurance is concerned there is no claim that the defendant has not fully complied with its undertaking. One part of every premium is set aside to accumulate as a fund toward the payment of the policy when it becomes a claim against the company. That fund is called the reserve fund. Another part of the premium is consumed in paying the costs of insurance and expenses. The remaining third part, augmented by the excess of interest earned upon the reserve of the policy, is surplus. Under an ordinary policy this surplus is annually returned to a

policy holder in some way agreed on and is commonly called dividend. On this policy has been engrafted the system called tontine, under which that surplus, instead of being divided and paid to the policy holder, goes to a fund called the tontine fund, the amount being credited to the particular class to which the policy belongs. When a policy lapses the reserve value becomes profits, and under the scheme such profits are divided among the surviving holders of the various classes. Such, in substance, is the tontine scheme." See also, 26 Am. & Eng. Ency. of Law, title, Tontine Insurance.

The system of tontine insurance has been quite fully illustrated in Pierce v. Equitable Life Insurance Society, 145 Mass. 56, where a policy, possessing many of the characteristics of the one before us, was involved. It was there held, in substance, that in case of the death of the insured before the expiration of the tontine period, the premiums on his policy having been paid, his estate would receive only the amount of the policy, and the accumulated surplus would be forfeited to and held by the company for the benefit of the class to which the policy belonged; and in case the policy holder should fail during the tontine term to keep up his policy, by payment of the premiums, the policy itself, as well as its accumulated surplus, would become forfeited to the company, for the benefit of the same class.

The doctrine of that case is not contended against by the plaintiff in error, but it is claimed to have no application to the question arising in this case, in view of the statute above quoted. It is, however, applicable, as an exposition of the rules which apply to policies issued under the tontine plan, and the rights of a policy holder under that system.

Whether the contract shall be construed as an Illinois contract or not, and whether the words of the Illinois statute are mandatory or not, do not seem to necessarily require determination by us. The plan or principle upon which the policy was issued is plainly ascertainable from the policy itself, and in our opinion the statute relied upon has no application to it, and does not, therefore, need to be inter-

preted. The contract, expressed by the policy, gave no right to plaintiff in error in or to the surplus she relies upon for payment of the two dividends for lack of which the policy was forfeited.

Counsel has presented his view of the case with marked ability and ingenuity, but until our Supreme Court shall pass on the case favorably to his contentions, we do not feel at liberty to follow his lead. The judgment will therefore be affirmed.