GEORGE G. PETERS *vs.* EQUITABLE LIFE ASSURANCE COMPANY.

Suffolk.   March 19, 1907. — June 20, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, & SHELDON, JJ.

*Equity Pleading and Practice,* Plea to the jurisdiction, Motion to dismiss.   *Equity Jurisdiction,* For an accounting, Comparative inconvenience.   *Jurisdiction.*   *Insurance,* Life.   *Corporation.*

The holder of a policy of life insurance, which provided for the payment to him, after a period named, of " this policy's entire share of the assets, i. e. the accumulated reserve, and in addition thereto the surplus apportioned by the insurance company to this policy," sought in equity an accounting from the company. The defendant filed a plea to the jurisdiction of the court and contended that the measure of the obligation of the defendant to the plaintiff depended solely upon the decision of its officers.   *Held,* that the fact that a possible construction of the policy might be that such decision was controlling was no bar to the court's taking jurisdiction of a suit in which one of the questions to be determined was whether such was the proper construction.

In a suit in equity for an accounting, the plaintiff was a resident of this Commonwealth and the holder of a policy issued by the defendant which insured the plaintiff's life in the sum of $25,000 and provided that, in case the plaintiff lived more than twenty years, called the " tontine dividend period," he should have the option either " to withdraw in cash the policy's entire share of the assets ; i. e., the accumulated reserve, and in addition thereto, the surplus apportioned by the . . . [defendant] . . . to the policy," or to have the defendant apply that amount for him in various ways stipulated.   The defendant was a New York insurance corporation with a capital stock of $100,000, a legal reserve of $347,000,000, and a surplus of $68,000,000, whose charter provided that its stockholders should not receive dividends of more than seven per cent annually, that the earnings and receipts over and above the dividends, losses and expenses should be accumulated, and that its business should be conducted " upon the mutual plan," but there was no provision that the policy holders should have the right to vote for officers of the corporation.   The bill alleged a refusal of the defendant to account to the plaintiff after the expiration of the tontine dividend

period for the amount to which he was entitled at that time, and also misman-
agement and misappropriation of property which should have been applied to
a fund a part of which was due to him, and that the items of the accounting
were complex and could not be adjusted at law conveniently or properly. A
motion to dismiss the bill and a plea to the jurisdiction of the court were filed
by the defendant, which were based on the contention that the relation between
the plaintiff and the defendant was that between a member of a mutual in-
surance company and the company itself, and that therefore the plaintiff had
no right to inquire into the internal affairs of the defendant in a State other
than that of its incorporation. *Held,* that the relation between the plaintiff and
the defendant was that of creditor and debtor, and not that of a member of a
mutual insurance company and such company itself, and that the bill might be
maintained.

A resident of this Commonwealth brought a bill in equity against a foreign cor-
poration having a usual place of business here, and alleged facts which entitled
him to an accounting. The defendant moved to dismiss the bill on the ground
that, to be compelled to account in this Commonwealth would be a great expense
and inconvenience to it, and of practically no benefit to the plaintiff. *Held,*
that the plaintiff, being a resident of this Commonwealth, had a right to main-
tain the bill irrespective of inconvenience and expense to the defendant.

BILL IN EQUITY filed in the Supreme Judicial Court for the
county of Suffolk September 4, 1906.

The bill alleged that the plaintiff was of Boston and that the
defendant was a corporation established under the laws of the
State of New York and having a usual place of business in Bos-
ton, that the defendant issued to the plaintiff on September 8,
1886, a policy of insurance having as its register date June 9,
1886.

A copy of the policy was annexed to the bill. It provided
that, in consideration of the application of the plaintiff and of
his statements therein, and in consideration of payment of pre-
miums by him "at the office of the society in the city of New
York," the defendant on the death of the insured would pay to
the beneficiary named in the policy the sum of $25,000 " at the
office of the society in the city of New York "; that the policy
was issued subject to certain provisions and requirements of
which the following are material to this case: (1) that the policy
was issued under the semi-tontine plan; (2) that the tontine
dividend period for the policy would be completed June 9, 1906;
(3) that no dividend should be allowed or paid upon the policy
unless the plaintiff should survive the tontine dividend period
and the policy then be in force; (4) that all surplus of profits
derived from such policies on the semi-tontine plan as should

not be in force at the date of the completion of their respective tontine dividend periods should be apportioned equitably among such policies as should complete their tontine dividend periods; (5) that upon the completion of the tontine dividend period on June 9, 1906, provided the policy should not have been terminated previously by lapse or death, the plaintiff should have the option either: "First, to withdraw in cash the policy's entire share of the assets: i. e., the accumulated reserve, and in addition thereto, the surplus apportioned by the society to the policy "; or to have the society apply that amount in either of three other ways specified; (6) after the completion of the tontine dividend period, while the policy should remain in force, it was to be entitled to all the rights and privileges of ordinary policies of the same age and kind; (7) all premiums were provided to be due in the city of New York at the date named in the policy, but at the pleasure of the society suitable persons might be authorized to receive such payments at other places, but only on the production of the society's receipt therefor, signed by the president, vice-president, actuary, secretary or assistant secretary, and countersigned by the person to whom the payment was made. The policy was executed at the defendant's office in the city of New York.

The bill of complaint further alleged that the defendant had refused to account to the plaintiff for his share in the " tontine fund," had not equitably apportioned to him his share, had failed to manage either the dividends retained by it or the tontine fund or the general business of the company honestly, carefully or prudently, and had misappropriated and wasted the dividends and the interest and profits thereon; also that the items of the accounting were peculiarly within the knowledge of the defendant, and that the accounts were complex and such that they could not conveniently or properly be adjusted or settled in an action at law.

The prayers of the bill were for an accounting, a determination of the amount fairly due to the plaintiff under the terms of his policy, a decree that such amount be paid to him, and for general relief.

The defendant moved that the bill be dismissed on the grounds that the defendant was a New York corporation with its principal

place of business in the city of New York and that all the books, papers and documents relating to its business were there, none of them being in this Commonwealth, although it maintained a place of business here; that the plaintiff's policy of insurance was a contract made in New York, to be executed there, and was subject to the law of that State; that the relief prayed for by the bill involved an inquiry into the relations between the corporation and its policy holders which might be very extensive; that it was a matter of grave inconvenience to the business of the defendant, and to the officers familiar with its business, to be held to account within this Commonwealth, and that the relations and rights of the parties could not be effectually and properly administered here.

The defendant also filed a plea to the jurisdiction of the court, alleging the same grounds as it alleged as the basis of the motion to dismiss, but, by amendment, setting forth with great particularity the inconvenience and expense to which it would be put by having to account in this Commonwealth. There were also contained in the amended plea some parts of the provisions in the charter of the defendant, among them being provisions that the stockholders of the defendant should not receive annually dividends greater than seven per cent of the par value of their stock and that the earnings and receipts over and above the dividends, losses and expenses, should be accumulated, and the provision, "The insurance business of the company shall be conducted upon the mutual plan."

The amended plea also alleged that "the earnings or profits over and above seven per cent were accumulated and held for the benefit of the society's policy holders who were entitled to share in the distribution thereof in accordance with the terms of their contracts and the principles and methods adopted by the society regulating the distribution thereof; that therefore any expense to which the society would be put in conducting an accounting in this action would fall upon the body of the holders of policies of the society issued upon the deferred dividend plan; that if any greater amount of surplus was apportioned to the policy in suit than had already been apportioned by the society, the additional amount would have to be borne by other policy holders in the reduction of the amounts to which they would be

entitled under their contracts," and that, "owing to the fact that the business of life insurance is extremely complicated and intricate, and based upon calculations and tables specially compiled and arranged, such account would be of no value or assistance whatever to the plaintiff," that the capital stock of the defendant was $100,000, and that "on December 31, 1905, its total assets amounted to $420,973,756.92, and its total liabilities amounted to $352,516,566.65, which said total liabilities included the legal reserve required to be maintained by it, amounting to $347,092,662. Therefore the difference between said total liabilities and said total assets, to wit, the sum of $68,457,190.27, constituted the surplus of said society."

No replication to the plea was filed.

There was a hearing before *Rugg*, J., who denied the motion to dismiss, adjudged the plea to the jurisdiction of the court bad, and, the defendant appealing, reported the case for consideration and determination by the full court.

*G. R. Nutter*, (*J. B. Studley & H. L. Burnham* with him,) for the defendant.

*T. Hunt*, for the plaintiff.

LORING, J. So far as the question of jurisdiction is concerned the defendant has sought in vain to distinguish this case from *Pierce* v. *Equitable Assurance Society*, 145 Mass. 56.

In one respect the case at bar is not so strong a case for the defendant company as was *Pierce* v. *Equitable Assurance Society*. The plaintiff in that case was a non-resident, and a non-resident has no standing in the courts of Massachusetts as matter of right. That was decided in the subsequent case of *National Telephone Manuf. Co.* v. *Du Bois*, 165 Mass. 117. It was apparently the non-residence of the plaintiff which the court had in mind as the objection to the jurisdiction in the case of *Pierce* v. *Equitable Assurance Society*, 145 Mass. 56, 62.

There appears to be one difference between the provisions of the policy here in question and the policy on which *Pierce* v. *Equitable Assurance Society* was founded. With the exception of the words "all surplus of profits" in the policy here in question in place of "all surplus or profits" in the policy in *Pierce* v. *Equitable Assurance Society*, the two policies are in substance identical in respect to the clause describing what profits the

policy holder is entitled to. Whether there is a misprint and the word " of" should be " or," or *vice versa*, is not material, for in either case the meaning is not substantially different.

There is however a difference between the two policies in the clause which states what the company is to pay over on the dividend or tontine period being completed. In *Pierce* v. *Equitable Assurance Society*, the promise speaks of ".this policy's entire share of the assets, whether in the reserve fund proper or in the accumulated surplus." The policy here in question speaks of " this policy's entire share of the assets, i. e. the accumulated reserve, and in addition thereto the surplus apportioned by this Society to this policy."

Although the plaintiff has not addressed his argument in terms to this point, the contention made by him involves the position that the measure of the obligation due to him does not depend upon the decision, or at any rate upon the uncontrolled decision of the directors or trustees of the defendant company. If the second of these two provisions does not control the first, the rights of the holder of a policy like that now before us are the same as the rights of the holder of the policy before this court in *Pierce* v. *Equitable Assurance Society*. One of the questions to be determined in this suit is whether the second provision does or does not control the first. The fact that it may, does not go to the jurisdiction of this court in a suit in which the question whether it does or does not is to be determined.

The rest of the defendant's argument is in effect a request for a reconsideration of the decision of the court in *Pierce* v. *Equitable Assurance Society*. After careful reconsideration of that decision, in view of the elaborate argument of the defendant's counsel, we are abundantly satisfied with the conclusion there reached and with the reasons there stated.

However inconsiderable the amount of the capital stock of the defendant corporation may be in comparison with its other assets, the fact that it is a corporation having a capital stock and that its directors or trustees are elected by its stockholders and not by the policy holders is decisive of the relation between the plaintiff and defendant. The relation between the two is that of debtor and creditor and not that of a member of a mutual

insurance company and the mutual insurance company itself. There is no allegation in the plea that the directors or trustees of the defendant corporation are not elected by the stockholders, and on this record it must be taken to be the fact that they are.

It is idle for the defendant to argue, as it has done at great length, that an agreement by a stock corporation to pay to a policy holder his share of the profits after expenses and a dividend to the stockholders. are provided for, is the same thing as the agreement between a mutual corporation and its members.

For the purposes now under consideration, not only are the two not essentially the same but they are entirely different.

When the plaintiff who brings the suit is a resident who has of right a standing in the courts of the Commonwealth, and who under our statutes has a right to implead a foreign insurance company, the only objection to the court's taking jurisdiction in suits like that now before us is that the relation between the foreign corporation and its own members is of necessity involved. That question must of necessity be decided finally, at any rate, by the courts of the State which created the artificial being made up of its several members; and the courts of this State will not entertain jurisdiction of suits involving that question. That was the ground on which jurisdiction was refused in *Smith* v. *Mutual Ins. Co.* 14 Allen, 336; *Kansas Construction Co.* v. *Topeka Railroad*, 135 Mass. 34; *New Haven Horse Nail Co.* v. *Linden Spring Co.* 142 Mass. 349; *Kimball* v. *St. Louis & San Francisco Railway*, 157 Mass. 7; *Wason* v. *Buzzell*, 181 Mass. 338. That ground was held, and rightly held, not to exist in a suit brought against a stock corporation by the holder of a policy issued by it although the policy as matter of contract gave the holder a right to a share of the surplus profits. In some respects there may be no substantial difference between the contract right to surplus profits which such a policy holder has in case of a stock corporation and the right to the same profits which enures to the member of a mutual company by reason of his being a member of such a company. But for the purpose of jurisdiction of a suit to enforce those rights in the court of a foreign State the difference between the two cases, to wit, the case of a policy issued by a stock company and that of a policy

issued by a mutual company, might make the difference between the court's taking or not taking jurisdiction.

The inconveniences to which the defendant will be subjected by reason of the multiplicity of books and the complexity of the accounts involved are matters to be considered in cases like *Pierce* v. *Equitable Assurance Society* and *National Telephone Manuf. Co.* v. *Du Bois,* where the plaintiff is a non-resident. But they are not matters which can be taken into account by the court when the plaintiff is a resident and as such has a standing in the court as matter of right, and the suit is brought to enforce a contract made between him and a foreign insurance company over which the court is given jurisdiction by statute.

The defendant has reargued with great earnestness that there can be but óne division between all policy holders and in consequence what is given to the plaintiff is taken away from others. The defendant has overlooked in this connection the capital stock of the defendant corporation. If by any chance this court should hold that the apportionment made by the defendant society was wrong and another court should hold that it was right, the defendant's capital stock would be answerable for the breach of contract. The amount of the capital stock is $100,000, and although that may be small in comparison with the assets of the corporation derived from its reserve fund and its undivided profits, yet it is likely to be sufficient to make good any breach of contract between this plaintiff and the defendant.

In view of what was said by the defendant's counsel in argument, it is proper to add that although *Pierce* v. *Equitable Assurance Society* came before this court on a report, it came on a report after a hearing on the merits where all the evidence was taken by a commissioner and made part of that report. There is nothing in the facts now before the court which was not presented to the court in *Pierce* v. *Equitable Assurance Society,* at least in substance.

We do not find it necessary to consider the propriety of basing a motion to dismiss on facts not apparent on the record.

The entry must be

*Order denying motion to dismiss affirmed ; order overruling*
*plea to jurisdiction affirmed.*