GEORGE G. PETERS *vs.* EQUITABLE LIFE ASSURANCE
SOCIETY OF THE UNITED STATES.

Suffolk.   December 2, 3, 1908. — January 7, 1909.

Present: KNOWLTON, C. J., MORTON, BRALEY, & SHELDON, JJ.

*Equity Jurisdiction,* For an accounting, Fraud.  *Insurance,* Life.  *Conflict of Laws.*
*Equity Pleading and Practice,* Demurrer.

A bill in equity against an insurance company by the holder of a policy of life
insurance issued by the company contained the following allegations: That the
policy provided that, at the expiration of a period of time called the tontine
dividend period, all surplus of profits derived from similar policies which should
not then be in force should be apportioned equitably among such policies as
should have completed such periods, and that thereupon the plaintiff should
have the option " to withdraw in cash this policy's entire share of the assets,
i. e. the accumulated reserve, and in addition thereto the surplus apportioned "
by the defendant to his policy, or to use his share in payment for future insur-
ance ; that the tontine dividend period as to the plaintiff's policy had passed,
that the defendant had not equitably apportioned the surplus due to the plain-
tiff and had not furnished him any accounting as to such fund, but that it had
refused to do so.  There were also allegations, sufficiently specific, as to fraud,
dishonesty, and wrongful misappropriations by the defendant in the manage-
ment of the tontine fund.   There was no averment that the plaintiff had
exercised his option as to the disposition of the share of the assets that had
been or should be allotted to his policy.   The bill prayed that the defendant be
ordered to account, that the share which should be apportioned to his policy
be ascertained and paid to him, and that the damages sustained by him be
assessed and paid to him.   The respondent demurred.  *Held,* that, under the
allegations as to fraud, dishonesty and wrongful misappropriations by the de-
fendant, the plaintiff had a right, before he exercised the option given him in
the policy, to maintain his bill in order to ascertain what was equitably due to
him under the terms of his policy.

While it is true that a bare charge, contained in a bill in equity against a life
insurance company by the holder of a policy issued by the company, that the
defendant or its officers had been guilty of fraud which lessened the amount
which equitably should have been paid to the plaintiff under the terms of the
policy, without the acts of fraud being specified, would not be sufficient for the

maintenance of the bill on the ground of such fraud, nevertheless the following allegations would be sufficient: That the defendant paid to its executive officers unnecessarily large and exorbitant salaries, improperly and unlawfully paid large sums of money as contributions for the campaign expenses of both of the two leading political parties, had invested its funds in large office buildings in bad faith and from dishonest motives, valuable portions of which buildings were rented to its officers and their relatives at prices much below their true rental value, managed its deposits in a way to benefit certain banking institutions whose officers were also officers of the defendant, participated with its funds in various speculative enterprises, whose securities officers of the defendant sold to it at exorbitant prices to their own profit, and expended large sums of money improperly in public entertainments.

A demurrer to a bill in equity against a life insurance company by the holder of a policy therein seeking an accounting and alleging that under the provisons of the policy the defendant had agreed to " apportion equitably " to the plaintiff the share of his policy in a certain fund and that such equitable apportionment had not been made, but that the defendant had refused to render to him an accounting of its use of such fund and had fraudulently and dishonestly misappropriated and mismanaged it, will not be sustained for lack of an allegation showing that the damage sustained by the plaintiff from the alleged wrongful acts of the defendant was not too small to warrant equity in interfering.

Whether, when a life insurance company makes an apportionment at the end of the tontine dividend period to the holder of a policy containing a provision that at the end of such period of the policy the insured shall have the option " to withdraw in cash this policy's entire share of the assets, i. e. the accumulated reserve, and in addition thereto the surplus apportioned " by the defendant to the policy, or to use his share wholly or in part in payment for further insurance, such apportionment is *prima facie* correct and not to be overthrown without evidence of fraudulent conduct on the company's part affecting the result, or at least of some error in the manner of making the apportionment or in the principles upon which it was based, was not decided in this case, which came before the court on demurrer to a bill in equity by a policy holder seeking an accounting from the insurance company, since the bill contained allegations, sufficiently specific, of fraudulent conduct on the part of the company in the management of its funds.

Where a bill in equity is based upon a contract made in another State and governed by the law of that State, but contains no allegations as to the laws of that State, the question, whether under such law the contract is enforceable by the bill in equity, cannot be raised by demurrer.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on September 4, 1906, and amended on September 12, 1908.

The case was before this court on an appeal by the defendant from an order denying a motion by the defendant to dismiss the bill. A decision affirming the order was reported in 196 Mass. 143. After the issuing of the rescript, the bill was amended by adding as specifications regarding the allegations of lack of honesty, care and prudence on the part of the defendant

in the management and investment of the tontine fund, the following:

" 1. That the defendant has, during each year while the plaintiff's policy was in force, paid to its executive officers unnecessarily large and exorbitant salaries, including salaries of $100,000 per annum to its president and its vice-president, and has, in each of those years, paid much larger sums than were reasonable or proper as fees to its directors, these fees amounting, in each year, to more than $40,000.

" 2. That the defendant has, in each of said years, improperly and unlawfully paid large sums of money as contributions to the national campaign funds of the republican and democratic parties, and also to the campaign funds of both those parties in the State of New York.

" 3. That the defendant and its officers and directors have, in each of said years, acted improvidently, fraudulently, and dishonestly in the investment of the funds of the corporation, including both the 'reserve' and the 'surplus,' in that they have neglected to invest said funds in a safe and profitable manner, whereby the greatest benefit might be derived therefrom by the society and the policy holders, including the plaintiff, but, on the contrary, have invested said funds in unsafe and unprofitable business ventures, in order that large profits might be made both directly and indirectly by said officers and directors for themselves.

" 4. That the defendant has, while the plaintiff's policy was in force, invested a very large proportion of its assets, including both 'reserve' and 'surplus,' amounting in all to about $37,884,000 in large office buildings, situated in fifteen cities in various parts of the world, including New York, Boston, and St. Louis; that these investments were made in bad faith and from dishonest motives; are such as would not have been made by reasonably prudent and honest men, and that they have proved highly unprofitable to the society; that the failure of these investments to return reasonable profits to the society has been largely due to the dishonest management of the buildings, and particularly to the fact that valuable portions of these buildings have been rented to the officers and directors of the defendant, or to their relatives or friends, or to corporations in which

they were financially interested, at prices much below their true rental value.

"5. That the defendant has, during each of said years, kept much greater sums of money than was reasonable or proper on deposit in banking institutions, receiving therefor much lower rates of interest than might otherwise have been obtained, and that this has been done in order to benefit these institutions, in which the officers and directors of the defendant have been financially interested, to the detriment of the society.

"6. That the defendant has, during each of said years, wasted and lost large amounts of its funds, including both 'reserve' and 'surplus,' by participation in various syndicates and other speculative enterprises for the purchase and sale, or underwriting, of securities; and that the officers and directors of the defendant have made large profits at the expense of the society by selling to it at exorbitant prices, securities owned or underwritten by syndicates of which said officers and directors were themselves members.

"7. That the defendant has, during the life of the plaintiff's policy, improperly expended large sums of money in public entertainments."

Other material allegations in the amended bill are summarized in the opinion.

The defendant demurred and alleged as causes of demurrer the following:

"1. The plaintiff has not in his bill made or stated any such case as entitles him to the relief prayed for, or to any relief against the defendant as to the matters contained in the said bill, or any of such matters.

"2. The plaintiff has a plain, adequate and complete remedy at law.

"3. The necessary parties are not before the court.*

"4. The plaintiff is not entitled to an order directing the defendant to furnish him an account showing in detail its dealings with the dividends, if any, upon the plaintiff's policy,

---

* In its brief, the defendant stated as to this cause of demurrer: "In view of the decision of the Pierce case with regard to parties, the defendant has not argued the necessity of joining other parties, but does not thereby waive its insistence on such necessity."

retained by it, and with the fund, if any, in which the plaintiff is entitled to share, or with the interests and profits on said funds, or with the accumulations thereof.

" 5.  Upon the facts alleged in the bill, the plaintiff is bound by the apportionment of the tontine fund made by the defendant, and is not entitled to have the amount of his share, if any, of the surplus ascertained by the court, or to a decree that such amount so ascertained shall be paid over to him by the defendant.

" 6.  The plaintiff has not alleged with sufficient definiteness and specification the facts tending to show that the defendant has not dealt honestly, or with due care, with the tontine fund, and has appropriated and wasted the same, as alleged in the eighth paragraph of the plaintiff's bill as amended, so as to entitle the plaintiff to any relief therefor.

" 7.  It does not appear that the plaintiff, on June 9, 1906, or at any time, made any election of the options given in paragraph five of the ' provisions and requirements ' stated in the policy dated September 8, 1886.

" 8.  It does not appear from the facts set forth in the bill as amended that the relief prayed for by the plaintiff is of a nature or in an amount sufficient to invoke the powers of a court of equity."

The demurrer was heard and overruled by *Hammond,* J. The defendant appealed and, at the request of the defendant, the presiding justice reported the case for determination by the full court.

*G. R. Nutter,* for the defendant.

*T. Hunt,* for the plaintiff.

SHELDON, J.  Material parts of the agreement which the defendant, by its policy of insurance, made with the plaintiff, were in substance that on the expiration of the tontine dividend period all surplus of profits derived from similar policies which should not then be in force should be apportioned equitably among such policies as should complete their tontine dividend periods, and that thereupon the plaintiff should have the option " to withdraw in cash [his] policy's entire share of the assets, i. e. the accumulated reserve, and in addition thereto the surplus apportioned " by the defendant to his policy, or to use his share wholly or in part in payment for future insurance.  The plain-

tiff's policy has completed this dividend period; but he avers that the defendant has not equitably apportioned the surplus due to him under the terms of the policy, that it has not furnished him a sufficient account or any account, or produced any such account, but has refused to do so, that it has not dealt honestly with the dividends retained by it, that it has misappropriated and wasted such dividends, and has failed to manage the tontine fund or its accumulations or the general business of the company honestly, carefully or prudently. And by an amendment to the bill he has charged certain specific acts and kinds of mismanagement and of wrongful, dishonest and fraudulent conduct which he avers have been committed by the defendant and its directors in the management and investment of its funds. There is no averment in the bill that the plaintiff has exercised his option as to the disposition of the share of the assets that has been or should have been allotted to his policy. He asks that the defendant be ordered to furnish him with an account; that the amount to which he is fairly entitled may be ascertained, and that such amount be paid to him; and that the damages sustained by him be assessed and ordered to be paid to him.

Some of the general questions raised by the defendant's demurrer to this bill have been already considered in *Pierce* v. *Equitable Assurance Society*, 145 Mass. 56, and in the decision made upon the defendant's objections to the right of this court to entertain this case reported in 196 Mass. 143. It is true, as was said in the Pierce case, *ubi supra*, that the relation between the defendant and the plaintiff is not that of trustee and *cestui que trust*, but that of debtor and creditor. This rule is now well settled in the courts. See besides the decisions referred to in the Pierce case (145 Mass. at p. 59), *Peters* v. *Equitable Assurance Co.* 196 Mass. 143, 148, 149 ; *Uhlman* v. *New York Ins. Co.* 109 N. Y. 421 ; *Brown* v. *Equitable Assurance Society*, 142 Fed. Rep. 835 ; *Everson* v. *Equitable Assurance Society*, 68 Fed. Rep. 258. But under the allegations of this bill the plaintiff is entitled to know before exercising the option given to him what is the amount of his policy's share of the assets, including the accumulated income and the surplus apportioned by the defendant to his policy, especially in view of the defendant's express agreement that all surplus of profits from policies like his " shall be

apportioned equitably " among the policies which shall complete their dividend periods. *Pierce* v. *Equitable Assurance Society,* 145 Mass. 56. He cannot wisely exercise his option until he shall have received this information. Upon the averments of the bill, under R. L. c. 159, § 3, cl. 6, the plaintiff has a right to come into equity, and to have such an accounting, unless some of the defendant's specific objections to the maintenance of the bill can be sustained.

The defendant's contention is that irrespective of the allegations of fraud this bill will not lie for an accounting; that in the absence of fraud the plaintiff is bound by the apportionment of the surplus made by the defendant; and that the bill does not contain such allegations of fraud or irregularity as to justify a court of equity in reviewing the apportionment made by the defendant.

1. In reference to the first contention of the defendant, we need not consider whether we should now follow all of the reasoning in *Pierce* v. *Equitable Assurance Society,* or rather should adopt the defendant's contention that the plaintiff's only right to compel an accounting from the defendant is incidental to the enforcement of some legal claim against it, and that until the exercise of his option as to what he will require from the defendant he has no such legal claim; that there is not shown to be at present any obligation on the part of the defendant to render an account to the plaintiff either by reason of the relationship between them or because of any provision in the policy or the language of any statute. *Brown* v. *Equitable Assurance Society,* 142 Fed. Rep. 835, 842. *Everson* v. *Equitable Assurance Society,* 68 Fed. Rep. 258, and 71 Fed. Rep. 570. *Hunton* v. *Equitable Assurance Society,* 45 Fed. Rep. 661. *Greeff* v. *Equitable Assurance Society,* 160 N. Y. 19, much of the reasoning in which may be applied to this case, although the stipulations of the policy there considered were not the same as are now before us. There is very much force in what was said by Peckham, J., in *Uhlman* v. *New York Ins. Co.* 109 N. Y. 421, 434, as to the consequences that would follow if every policy holder of a class like this had the right to call the defendant to account " and to cause it to give in the trial of the action a detailed account of every transaction (proved by reference to or the production of its

books, and by the oaths of its officers) which took place from the commencement to the termination of the tontine period in regard to those matters material to be known upon the question of an equitable apportionment of the fund.  There would be no necessity for an allegation, much less even the slightest *prima facie* proof of wrongdoing or that there had been any mistake made by the company in the apportionment made by it.  But the mere fact that an individual was the owner of one of those policies in force at the termination of the tontine period would give him a right of action and a right to demand this proof from the defendant. . . . That this should be permitted without an allegation, even on information and belief, that any fraud, mistake or impropriety in the accounts or in the manner of their statement had been made by the officers or agents of the company would seem to be intolerable."  This was said, however, in a case in which the plaintiff had abandoned all allegations as to any misappropriation of the funds or any wrongdoing in regard thereto, and claimed a right to an accounting from the mere nature of the transaction as shown by the policy.  It well may be that this plaintiff would not be allowed to have the accounting for which he asks without first offering proof of his averments of fraud on the part of the defendant.  But it is generally agreed that such an accounting would not be denied where there had been actual wrongdoing and fraudulent misappropriation of the assets that should have been accounted for and apportioned. This is either expressly declared or assumed in *Greeff* v. *Equitable Assurance Society*, 160 N. Y. 19 ; *Uhlman* v. *New York Ins. Co.* 109 N. Y. 421; *Watts* v. *Equitable Assurance Society*, 55 N. Y. Misc. 454; *Brown* v. *Equitable Assurance Society*, 151 Fed. Rep. 1; *Gadd* v. *Equitable Assurance Society*, 97 Fed. Rep. 834; *Everson* v. *Equitable Assurance Society*, 68 Fed. Rep. 258, and 71 Fed. Rep. 570 ; and *Bain* v. *Ætna Ins. Co.* 20 Ont. 6.

The bill before us expressly charges such fraud, dishonesty and wrongful misappropriation ; and the amendment at least makes these allegations sufficiently specific to call for an answer. The bare charge that the defendant or its officers had been guilty of fraud would not of course be sufficient without setting out the facts which constituted the fraud relied on.  *May* v. *Wood*, 172 Mass. 11.  *Blair* v. *Telegram Newspaper Co.* 172 Mass. 201,

203, 204. *Garst* v. *Hall & Lyon Co.* 179 Mass. 588, 590. *Nye* v. *Storer*, 168 Mass. 53, 55. *Tetrault* v. *Fournier*, 187 Mass. 58, 62. But any deficiency in this respect in the original averments of the bill is cured by the amendment. *Brown* v. *Equitable Assurance Society*, 151 Fed. Rep. 1. The allegations as amended go further than those which were held to be insufficient in *Blair* v. *Telegram Newspaper Co.* 172 Mass. 201, 204. Such dishonesty as is charged, directly diminishing the fund from which an apportionment was to be made to the plaintiff's policy, was necessarily injurious to him; and the rule stated in *Lewis* v. *Corbin*, 195 Mass. 520, 524, is not to be applied. Nor is it now material that the plaintiff has not limited the extent of his possible recovery by expressly averring the amount of his damages, and that these may turn out to be too small to warrant equity in interfering, within the rule of *Giragosian* v. *Chutjian*, 194 Mass. 504, 507, and cases cited. There is no presumption that this will be the case; if it should so turn out, the defendant will have the benefit of it.

2. As to the defendant's second contention, the weight of authority elsewhere undoubtedly is against the dictum in *Pierce* v. *Equitable Assurance Society*, 145 Mass. 56, 58, 59, and is to the effect that the apportionment made by the defendant is *prima facie* correct, and is not to be overthrown without evidence of fraudulent conduct on its part affecting the result, or at least of some error in the manner of making the apportionment, or in the principles upon which it was based. *Greeff* v. *Equitable Assurance Society*, 160 N. Y. 19. *Uhlman* v. *New York Ins. Co.* 109 N. Y. 421. *Buford* v. *Equitable Assurance Society*, 98 N. Y. Supp. 152. *Gadd* v. *Equitable Assurance Society*, 97 Fed. Rep. 834. *Everson* v. *Equitable Assurance Society*, 68 Fed. Rep. 258, and 71 Fed. Rep. 570. *Bain* v. *Ætna Ins. Co.* 20 Ont. 6. But we need not further consider this question; for the fact that such fraudulent conduct is expressly charged in the bill makes it impossible to sustain the demurrer for this reason.

3. The contention that the bill as amended does not contain such allegations of fraud or misconduct as to warrant equity in interfering has been already sufficiently considered.

It may be added that while there is ground for the contention that this policy is a New York contract, to be governed by the

laws of New York, we have not felt at liberty to consider whether this action can be maintained under those laws. What those laws are is of course a question of fact in this jurisdiction, and cannot be considered upon demurrer to a bill which contains no allegation as to the New York laws.

*Demurrer overruled.*