WHITE FUEL CORPORATION *vs.* LIBERTY MUTUAL INSURANCE
COMPANY.

Suffolk.   October 6, 1942. — February 1, 1943.

Present: FIELD, C.J., LUMMUS, QUA, & DOLAN, JJ.

*Insurance,* Mutual company, Surplus.   *Words,* "May."

Under G. L. (Ter. Ed.) c. 175, §§ 80, 90, a mutual insurance company
doing business of the kinds specified in the first paragraph of § 90,
acting in good faith may accumulate, in addition to the calculated
policy reserves, a surplus for future contingencies and the general
strengthening of the company, even though the surplus may wholly
or partly benefit policyholders other than those who are policyholders
during the period it is accumulated.

BILL IN EQUITY, filed in the Superior Court on December
14, 1940.

The suit was reported following the sustaining by *Spald-
ing,* J., of a demurrer to the bill.

*E. C. Park,* for the plaintiff.

*D. E. Hall,* (*P. N. Jones & J. P. Allen, Jr.,* with him,)
for the defendant.

QUA, J.   The bill alleges that between January 1, 1934,
and May 1, 1939, the plaintiff was the holder of various
policies of insurance in the defendant mutual insurance
company.   These policies were of the types known as
workmen's compensation, public liability, products liability,
and automobile public liability and property damage.   The
plaintiff paid premiums on these policies to the total amount
of $70,899.39 and received dividends at the rate of twenty
per cent of the premiums, amounting to $14,179.87.   It is
alleged that the amounts paid by the defendant in dividends
to policyholders on policies expiring during the foregoing
period were "very much less than the net earnings of the
defendant after setting up all reserves required or permitted
by law"; that during approximately that period the
defendant increased its surplus in various surplus funds

by an amount aggregating $13,017,514, representing accumulated profits not distributed to policyholders; and that the purpose of this accumulation was to provide for the benefit of future policyholders a capital fund or funds which might be used to pay losses, expenses, and dividends and to relieve against assessments. The bill seeks an accounting and payment to the plaintiff of the plaintiff's pro rata share of the defendant's profits accumulated during the period while the plaintiff was a policyholder of the defendant, calculated upon the ratio of the premiums paid by the plaintiff to the total net premiums earned by the defendant.

It is the contention of the plaintiff that a mutual insurance company is a strictly coöperative enterprise established for the mutual benefit of its existing policyholders; that all profits earned belong to the policyholders for the time being and must be paid to them as dividends or otherwise reserved to them; and that a mutual company cannot, consistently with its very nature, accumulate out of premiums paid in by policyholders a general surplus which will redound to their benefit only if they continue to be policyholders, and otherwise will benefit only subsequent policyholders who may have contributed little or nothing to the fund. See *Commonwealth* v. *Massachusetts Mutual Fire Ins. Co.* 112 Mass. 116, 120–121; *Baxter* v. *Chelsea Mutual Fire Ins. Co.* 1 Allen, 294, 296–297; *Smith* v. *Hunterdon County Mutual Fire Ins. Co.* 14 Stew. (N. J.) 473; *Penn Mutual Life Ins. Co.* v. *Lederer*, 252 U. S. 523, 525. Compare *Huber* v. *Martin*, 127 Wis. 412, 437–438.

It is the contention of the defendant, on the other hand, that the statutes now in force recognize the policy of the accumulation of surpluses by mutual casualty companies and permit such accumulation beyond the calculated policy reserves, even though subsequent policyholders may largely benefit therefrom; and that the by-laws of the defendant and the policies themselves, all of which by stipulation have been treated as set forth in the bill, expressly provide for the accumulation of such surplus.

The question decisive of the case is whether a mutual

insurance company doing business of the kinds indicated by the policies here involved can accumulate, in addition to the calculated policy reserves, surplus funds for the general strengthening of the company, for which funds it is not obliged to account to those who were policyholders during the period of accumulation. An examination of the statutes shows that this question must be answered in the affirmative.

General Laws (Ter. Ed.) c. 175, § 90, provides that mutual companies, other than life, transacting business of the kinds here involved, and their officers, directors, agents and members, shall, with exceptions not now material, "be subject to all the provisions of this chapter relating to mutual fire companies and their officers, directors, agents and members, so far as applicable." Turning to the provisions relating to mutual fire companies, we find in § 80, among other things, provisions that "From time to time the directors of a mutual fire company may by vote fix and determine the percentages of dividend or expiration return of premium to be paid on expiring or cancelled policies," which may in their discretion be different for the different kinds of risks against which the companies are authorized to insure; that "any such company may accumulate and hold profits, but only until such profits equal four per cent of its insurance in force"; and that "Such accumulation may be used from time to time in the payment of losses, dividends and expenses." In our opinion § 80 was intended to subject the payment of dividends in mutual fire companies to the sound discretion of the directors. The word "may" is appropriate to this purpose. *Brennan* v. *Election Commissioners of Boston*, 310 Mass. 784, 785–787. Section 80 also expressly permits mutual fire companies to "accumulate and hold profits," within the limitation there laid down, — in other words, to establish a permanent general surplus. There is nothing to the contrary in the statutory provisions for different rates of dividends upon different classifications of risks such as are found in § 80 and in G. L. (Ter. Ed.) c. 152, § 53.

Both parties in their carefully prepared briefs have traced

the interesting history of the provisions now appearing in § 80. That history is too long for repetition here. In our opinion it shows that if allowing a mutual insurance company to accumulate a general surplus which may at some future, time of stress be used to the advantage of policyholders other than those from whose premiums it was accumulated, or in proportions different from those in which it was contributed, constitutes, as the plaintiff says it does, a departure in some degree from the original conception of mutual insurance as simple coöperative self insurance strictly at cost, that departure was intentional and deliberate. The defendant suggests that it came about as an ultimate consequence of the disastrous experience of mutual fire companies in the Chicago fire of 1871 and in the Boston fire of 1872. Whether this is true or not, the change may well have been thought necessary in order to give financial stability and continuity to mutual companies equivalent to that given to stock companies by their capital stock and thus to assist the mutual principle as a whole to survive in the insurance business.

The plaintiff argues that the provisions of § 80 to which attention has been called above are not "applicable" under § 90 to a company like the defendant, since the accumulation of profits under § 80 is to be limited to "four per cent of its insurance in force," and it is impossible in workmen's compensation and liability insurance to fix upon any sum as the amount of insurance in force, as can be done in fire insurance. We do not accede to this argument. The provisions of § 80 relative to dividends and accumulations are so important in the scheme of powers and obligations of mutual companies that if such companies doing a workmen's compensation and liability business would not, apart from § 80, have the powers in these matters there set forth (which we do not decide), only the strongest reasons would persuade us that these provisions were not intended to be made applicable to such companies. Evidence that they were intended to be so made applicable is furnished by the provision in § 54 (e) that *any* mutual company transacting the kinds of business there mentioned may accumulate the

net cash assets required thereunder *"in addition to the amount permitted by section eighty,"* and by the provision of § 93F, inserted by St. 1941, c. 716, § 3, that any mutual fire company or *"any company specified in the first paragraph of section ninety, which has and maintains a surplus to policyholders"* of an amount set forth may issue nonassessable policies. We need not determine whether there exists any method of ascertaining the amount of insurance in force or its equivalent in workmen's compensation and liability policies, since we are of opinion that even if no method exists the result will be only to render the particular limitation clause inapplicable and not to render inapplicable the general scheme by which mutual companies may exercise a reasonable control over their dividends and may retain a reasonable surplus to meet contingencies that may arise.

We may add that the discretion of the directors in these matters is, of course, not an absolute one, but is subject to the requirements of good faith and obedience to law established as generally controlling the decisions of directors of corporations in like situations. *Morse* v. *Boston & Maine Railroad*, 263 Mass. 308, 311. *Anderson* v. *Bean*, 272 Mass. 432, 444. *Joslin* v. *Boston & Maine Railroad*, 274 Mass. 551, 555. There are in the present bill no sufficient allegations of fact to show bad faith or abuse of discretion by the directors.

Since in our opinion the applicable statutes gave the defendant power, acting in good faith, to accumulate a surplus and to withhold distribution from the plaintiff of any part of it, we are not called upon to decide whether such power has been created or could be created by the terms of the defendant's by-laws and of the several contracts of insurance. It is enough to say that the by-laws and the policies recognize the existence of the power and contain no qualifications limiting its exercise.

No such question is here presented as was involved in the tontine provisions of the policy passed upon in *Pierce* v. *Equitable Life Assurance Society*, 145 Mass. 56. See *Peters* v. *Equitable Life Assurance Society*, 200 Mass. 579, 587. See generally *New York Life Ins. Co.* v. *Burbank*, 209 Iowa,

199; *Greeff* v. *Equitable Life Assurance Society,* 160 N. Y. 19; *White* v. *Provident Life & Trust Co.* 237 Penn. St. 375; *Equitable Life Assurance Society* v. *Brown,* 213 U. S. 25.

*Interlocutory decree sustaining*
*demurrer affirmed.*