I. B. MILLER *et al.*

*v.*

JOHN M. RUSSELL.

*Opinion filed October 23, 1906—Rehearing denied Dec. 20, 1906.*

1. EQUITY—*when equity has jurisdiction.* A court of equity has jurisdiction of a bill for discovery and accounting where the amount of complainant's claim, although based upon a contract, can not be ascertained except upon inspection of books and papers in the possession of the defendant, and the account itself is complicated and intricate, involving transactions about which the defendant alone can furnish accurate information.

2. JUDGMENTS AND DECREES—*when party cannot complain that decree required payment of money into court.* Defendant to a bill for a discovery and accounting cannot complain of a provision of the decree requiring payment of the amount found due into court pending the settlement by the court of equities between the complainant and a third party, based upon a transaction with which the defendant had nothing to do and which does not affect the defendant's liability.

3. CONTRACTS—*when party cannot complain of measure of damages.* Where it is the duty of the defendant, under its contract, to notify the complainant of all forfeited sales of stock, so that he may make re-sales and receive compensation at the same rate specified for the original sales, if the defendant fails to notify the complainant of such forfeited sales it cannot complain that the decree, on accounting, charges it with the amount of stock forfeited by it at the compensation the complainant would have received had he been notified of such forfeitures and made re-sales, where it appears that at the time the forfeitures were declared there was a ready market for the stock.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

On January 29, 1901, the defendant in error, John M. Russell, filed his bill for a discovery and an accounting in the circuit court of Cook county against the plaintiffs in error, I. B. Miller, Milton George, John R. Markley, Henry D. Bushnell, James H. Prothero, Ellen Harpell, Terry George, Myron W. Hayner, A. F. Bennett, John B. Welcome, Lee Mantel, Charles A. Clark, D. N. Graves, and the unknown owners of shares in the Mexican Plantation Association of Chicago and the unknown members of said association. The bill alleged that the defendants, a partnership, were engaged in the business of establishing a plantation in Mexico and selling shares in the same; that on November 12, 1897, the association entered into a written contract with the complainant to sell land under what were called "development contracts," being agreements between the purchasers of land and the association that for a total price of $350 per share, to be paid $2 in cash and the balance in forty-seven monthly installments, the purchaser of each share was to be entitled to all dividends paid upon his interest, and to an amount of land equal to one acre for each share sold, in a fully planted and developed tropical plantation, and providing that if the purchaser should make default in the pay-

ment of any installment all interest of the purchaser should cease and all money previously paid should be retained by the association as liquidated damages, but that no default should be entered until a notice of fifteen days had been given to the purchaser, of his arrearages, and in case of death of the purchaser the money paid by him was to be refunded, at the option of his personal representative. It was further alleged that the contract with complainant provided that upon sales made by him he was to receive $30 per acre, $2 being paid per acre when the first payment was made and seventy-five cents per acre as each of the subsequent monthly payments was made, until the full sum of $30 per acre had been paid him, and by a verbal agreement subsequently entered into it was agreed that a commission of $30 per acre should be paid, $2 on the first, second and third payments and seventy-five cents on all subsequent payments, and in case any of the purchasers secured by him should fail to make the payments and the same become forfeited, then such compensation should cease, but the complainant should receive notice of such lapsed or forfeited contracts and be given thirty days in which to re-sell the land thus forfeited, for which he was to receive full compensation as provided in the original contract; that he was to devote his entire time and energy to the selling of lands, and the contract should remain in full force and effect until all of the lands had been sold. The bill further alleged that immediately after the execution of the contract the complainant entered upon the business of his agency and made a special effort among the school teachers of the city of Chicago, and appointed sub-agents, and succeeded in making sales of a large number of shares; that it was subsequently agreed that he should have the exclusive right to canvass and sell to all such teachers in the city of Chicago, and should have full commission on all sales to them, however made; that contracts of sale were made by the association to divers school teachers unknown to the complainant, and that compensation was due him for such

sales, for which he had not been paid; that he continued the work of his agency until notified by the officers that all land had been sold; that the accounts of sales made by him and his agents were kept by the association, and that the defendants had failed and refused to give him access to the books of the company; that the association had never given him any notice of lapsed or forfeited shares, so that he could re-sell them, and it had withheld from him all knowledge of such lapsed shares, thus preventing him from making re-sales; that the number of such shares could not be ascertained except from the books of the association, and that if an account was rendered it would show that at least $9000 or $10,000 was due him. The prayer was for an accounting of the amount of commission due; that the association should produce its books for the inspection of the complainant; also for a discovery.

The answer of the defendants denied the verbal agreement as to school teachers, and alleged that such contract, even if made, was invalid; denied the failure to account or to render plaintiff access to the books; alleged that they had rendered a full, just and true account and had paid over to the complainant all commissions due him; denied the failure to notify him as to lapsed shares, and alleged that he had a full and adequate remedy at law.

An interlocutory decree was rendered requiring the defendants to present before the master all documents, papers and books with reference to the claim of the complainant, and referring the cause to a master to take the evidence and state the account. The master found and reported in favor of the complainant, and upon that report a decree was rendered in his favor for $10,442.75. An appeal was prosecuted to the Appellate Court, where the decree of the circuit court was affirmed, and a writ of error has been sued out of this court to review that finding and judgment.

SHOPE, MATHIS, ZANE & WEBER, for plaintiffs in error.

H. B. JACKSON, for defendant in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

It is first insisted by plaintiffs in error as a ground of reversal that the cause of action arose upon the violation of a contract between the parties; that the company occupied no fiduciary relation with reference to the defendant in error and did not hold the money received by it in trust for him, and he therefore had an ample and adequate remedy at law under sections 6 to 12 of chapter 2 of Hurd's Statutes of 1903, and that under section 5 of article 2 of the constitution it was entitled to a trial by jury for an alleged breach of the contract. These objections go to the jurisdiction of a court of equity to entertain the bill.

A similar question has been before us on other occasions and the law settled, at least in this State, against the contention of plaintiffs in error. In *Hair Co.* v. *Daily,* 161 Ill. 379, we held that, as a general rule, in matters of account courts of equity have a general jurisdiction where the accounts are mutual; also where they are on but one side, a discovery being sought which is material to the relief prayed. And again in the case of *Gleason & Bailey Manf. Co.* v. *Hoffman,* 168 Ill. 25, it was held that jurisdiction in equity exists where there are mutual accounts between the parties, or where the account is all on one side and there are complications or difficulties in the way of an adequate remedy at law, or where a fiduciary relation exists and a duty rests upon the respondent to render an account. In the case of *Crown Coal and Tow Co.* v. *Thomas,* 177 Ill. 534, it was again held that equity may take jurisdiction in matters of account when the state of account between the parties is intricate and complicated or so involved with the rights of third parties that it would be difficult for a jury to unravel the numerous transactions, and that the jurisdiction of equity in matters of account does not depend upon the existence of a remedy at law, but upon the adequacy and prac-

ticability of such remedy and upon the discretion of the court. (Bispham's Principles of Equity,—4th ed.—p. 536, and cases cited in note 2.) We think the facts in this case clearly within the rule. The defendant in error entered into a contract with the association, represented by the plaintiffs in error, under which he made many sales of land in conformity with said development contract. He was to receive compensation in small amounts on each of the sales, and this compensation was paid to the association and entered upon their books. The payments were not made to him, but by the terms of the contract were all payable to the association. He had no means of telling when or in what amounts such payments were made except through its books, and it is apparent from the evidence that the association neglected and refused to give him this information. He made frequent demands upon its officers for that purpose, which were refused. While the account was, therefore, upon one side, the information as to the state of the account was entirely in the possession of the association. The account stated by the master was shown to be complicated and very intricate and covered many pages of the abstract. Manifestly it would have been practically impossible for a jury, even with the books in evidence, to figure out the amount due the complainant. For that, if no other, reason the claim of the complainant was the proper subject of an accounting by the master. Moreover, the bill not only prays for an accounting, but for a discovery against the association. The contract between the parties provided that complainant should have the right to make re-sale of all forfeited shares, and the evidence shows that 186 shares were forfeited by the association and no report whatever of them made to him. He had no adequate means of ascertaining this fact except by a bill for discovery. The bill is not, however, a bill for general discovery, but one seeking the discovery of facts upon which the complainant bases his action, which he alleges are wrongfully withheld from him.

It is next insisted that the decree is erroneous in holding that it was the duty of the plaintiffs in error, under the terms of the contracts both with the purchasers and with the defendant in error, to lapse or declare forfeited the shares upon which default in payment had been made. While it is true that the decree finds that it was the duty of the association to declare forfeited the shares upon which default in payment had been made, we are unable to see in what way that finding prejudiced or injured plaintiffs in error. The decree does not charge them with any shares which were not declared forfeited, even though the purchaser was in default in payment. They are simply charged with 186 shares which they voluntarily declared forfeited on account of default in payment. These forfeitures were declared without any suggestion from the defendant in error, and the association never at any time notified him of such forfeitures, as provided in the terms of the contract. If the decree had charged the association with certain shares which should have been forfeited but which were not so declared by the association, there would be force in the contention of the plaintiffs in error.

It is next insisted that the decree is erroneous in requiring the plaintiffs in error to pay into court the money found due before determining the parties entitled to it. The decree retains jurisdiction for the purpose of settling certain equities between the defendant in error and his brother. The record is silent as to whether the money was actually paid into the court by the association. If it did not pay the money in compliance with the terms of the decree it would have no cause to complain; and even if it did pay, it can make no difference to it whether the money belonged to the defendant in error or his brother. If it belonged to his brother, it was by virtue of a contract of agency between defendant in error and the brother, with which the plaintiffs in error have nothing whatever to do.

The decree below was for $10,442.75. Of this amount $4862.75 was found due on account of money actually paid to the association by shareholders, and no dispute seems to be made as to the correctness of that amount. The balance of the money found due is for 186 shares forfeited by the association, at $30 per share. This last amount is contested on the ground that the decree is based upon a wrong measure of damages. It is insisted that even though these shares had been forfeited and the defendant in error was entitled to pay for the same at $30 per share, yet there is no way of telling whether he could have re-sold them or that full payment would have been made upon them, and the association would not be liable for any payments which were not due up to the time of filing the bill. The contract expressly provided that the defendant in error should have the right to make a re-sale of all forfeited shares and should receive compensation for the same at the rate specified in the original contract. The plaintiffs in error entirely failed and neglected to comply with this provision. The shares were lapsed, and some of them had been forfeited for over two years prior to the filing of the bill and no notice had been served upon the defendant in error. The evidence shows that at the time of the forfeiture there was a ready sale for the shares, and if the defendant in error had been promptly notified he might have sold them. He was prevented from doing so by reason of the violation of the terms of the contract by the association. It would seem for this reason the association is in no position to complain. If permitted to do so it would enable it to take advantage of its own wrong. If it had performed its agreement it would be in a position to object to the terms of the decree, but not otherwise. We think the finding of the decree is in accordance with the evidence and that the chancellor committed no error.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*