## V. H. Parke & Son Company, Appellant, v. Almon D. Thompson, Appellee.

Contracts—*"estimated" construed.* *Held,* that the word "estimated" in the connection used, was the equivalent of "about" or "approximately," which words when applied to number or quantity mean the specific number or quantity named less slight or immaterial deviation.

Assumpsit. Appeal from the Circuit Court of Macon county; the Hon. William C. Johns, Judge, presiding. Heard in this court at the November term, 1909. Reversed and remanded. Opinion filed December 1, 1910.

Le Forgee & Vail, for appellant.

Jack, Irwin, Jack & Miles, for appellee.

*Per Curiam.* This is an action in assumpsit by the appellant corporation, a wholesale dealer in cement, doing business in Decatur, Illinois, against appellee, a contractor in Peoria, Illinois. The cause was tried by the court without a jury, and at the close of the plaintiff's evidence the court, upon motion of the defendant, rendered judgment in his favor and against the plaintiff for costs. This appeal is prosecuted to review such judgment. The special counts of the declaration are predicated upon the contract between the parties which it is agreed is embodied in the three following writings:

(Exhibit 8).

"Memoranda of Prices, Subject to Conditions on Reverse Side of this Sheet, and cancelling all Previous Quotations.

V. H. Parke & Son Co.

Decatur, Ill. Mar. 30th, '07.

Almon D. Thompson, Esq.,

Peoria, Illinois.

Terms Net 10th month following delivery.

Authority G. J. P.   What Job Concrete sewer.

Quantity Estimate 5,000 bbls.

To be Shipped on or About   In total prior to Jany. 1st 1908.

For immediate acceptance, we quote ATLAS Portland Cement as follows :—

F. O. B. Cars Decatur, Illinois

In barrels, including barrels at......$......per bbl.

In cloth bags, including bags at $2.03 per bbl. x x x

We will purchase Atlas cloth bags as shipped by us, 7½ c. each, subject to conditions named in Clause Ten on the reverse side of this sheet, x x x.

A Carbon Copy of this Sheet is filed in our office.

V. H. PARKE & SON COMPANY PER G. J. PARKE.

Terms and Conditions of Sale and Shipment.

1st   All prices subject to change without notice. Quotations and contracts shall not be binding until orders have been accepted by us in writing. x x x

2nd   x x x

3rd   x x x

4th   x x x

5th   x x x   Shipments will be made on or as near the date as named for shipment in the contract as possible, and the purchaser hereunder agrees to accept shipment so made, after cars have been billed out of the mill, unless we are notified in writing by the purchaser hereunder to cancel shipments in ample time prior to cars being billed out of the mill.

6th   x x x

7th   x x x

8th   ALL SALES ARE MADE subject to advance in freight rates until cars are receipted for by Railroad Companies.   Any increase in cost of freight from mills to points of delivery to be added to the price quoted or billed.

9th   x x x

10th   Cloth bags are returnable to Decatur, Illinois, for credit, when shipments are made in local lots out of stock Decatur.   Cloth bags are returnable to mill for credit, when shipped as car lot from mill.   Freight must be prepaid on returned sacks and are subject to our mill recount.   All cloth bags must be paid for at time invoice is paid.

11th   Bill lading for all sacks returned to us or the

mill, must be mailed to us as soon as shipment of bags is made.''

(EXHIBIT 9).

"Decatur, Ill., Apr. 10, 07.

''ALMON D. THOMPSON, PEORIA, ILLINOIS.

We beg to acknowledge receipt of your order by..... personally....date....Apr. 10- 07- ....for Approximately 5000 barrels—Atlas Portland Cement in cloth .....Shipment will be made as per our letter of this date.  Upon conditions of our quotation to you Dated Mar. 30- 1907-

In making inquiry refer to our Number 1037.

Thanking you for this valued order and awaiting your further favors we remain,

.V. H. PARKE & SON COMPANY, per G. J. PARKE.

Accepted ALMON D. THOMPSON.''

(EXHIBIT 10.)

"Decatur, Ill., April 10, 1907.

''MR. A. D. THOMPSON, PEORIA, ILL.

Confirming our conversation to you to-day, at which time you placed an order with us for some 5,000 barrels of Atlas Portland Cement, same registered under our No. 1037, would say that in shipping this cement to you we will request that you advise us at least ten days prior to your needing cement for your work here, and at that time state to us how many barrels per week we shall list at the mill to be shipped regularly.  You understand that shipments thus listed at the mill will be shipped according to the amount named per week, and in case that work is stopped and cement not needed you are to give us ample notice of such stoppage of work and we will have the mill hold up the shipments. When you wish to resume work requiring cement on this contract you are to advise us as noted in the first part of this letter, for resumption of shipments.

V. H. PARKE & SON Co.''

The declaration consists of the common counts and three special counts.  The first count, after the formal parts, avers that on April 9, 1907, the plaintiff sold to the defendant approximately 5,000 barrels of Atlas Portland cement at the price of $2.03 per barrel, ac-

cording to the terms and conditions of the contract hereinbefore set forth; that the time for delivery of the cement had long since elapsed, and that the plaintiff had always been ready and willing to furnish and deliver the same in accordance with the terms of the contract, of which the defendant had notice; that the defendant would not receive the cement so purchased, except 2896 barrels thereof, and had refused to comply with his agreement; whereby the plaintiff had been deprived of great gains and profits, etc.

The second count avers the sale of the cement at the price of $2.03 per barrel, in accordance with the terms of the contract in question; that from the time of the making of the contract up to and including January 1, 1908, and afterwards, the plaintiff was ready and willing and tendered and offered the cement to the defendant, but that the defendant had refused to accept the same.

The third count avers that on April 10, 1907, the defendant bought of the plaintiff approximately 5,000 barrels of Atlas Portland cement, at $2.03 per barrel, according to the contract in question; that from April 10, 1907, up to January 1, 1908, the plaintiff was ready and willing at all times to perform its part of the agreement in accordance with the terms and conditions aforesaid and often requested the defendant to accept and pay for the cement, and that although the defendant should have accepted and paid for the cement within the period ending on January 1, 1908, yet he did not receive and pay for any of it except 2896 barrels thereof; wherefore the plaintiff on March 1, 1908, sold the residue of said lot of cement remaining unaccepted, to the highest and best purchaser, at a loss of 46 cents per barrel on every barrel thereof.

The defendant pleaded the general issue and gave notice in writing of the following special defenses thereunder: That said contract was entered into with reference to the construction of a certain sewer which the defendant had then and there agreed to construct

for the city of Decatur, and in the construction of which it was then and there contemplated that defendant should require approximately 5,000 barrels of cement during the year 1907, to be delivered to him by plaintiff from time to time during said year 1907 and prior to January 1, 1908, as the necessities of defendant in said construction should require, of all of which plaintiff then and there had notice; also, that in the construction of said sewer during the year 1907, the defendant did not require, and could not use, in and about the said work, the amount of 5,000 barrels of cement estimated in said contract, but only required and could only use the quantity from time to time during said year directed by the defendant to be shipped by plaintiff, and which was, in pursuance of such directions, shipped and delivered to defendant, to wit: 2,896 barrels; for all of which cement so required and used by defendant in such work during the year 1907, he at the time when the several deliveries thereof became due and payable in accordance with said contract, paid the said plaintiff at the prices stipulated in said contract.

The evidence shows that during February or March, 1907, the defendant entered into a contract with the city of Decatur, for the construction of a sewer, and that Mr. Parke, secretary and treasurer of the plaintiff company, entered into negotiations with the defendant with the view to selling him cement to be used in the construction of such sewer, which finally resulted in the execution of three instruments, Exhibits "8," "9" and "10," hereinbefore set forth. The evidence further shows, that the amount of cement actually delivered to Thompson under the contract was 2,896 barrels, the last shipment having been made about November 27, 1907; that the amount of profit per barrel on the contract between the plaintiff and the defendant, and the contract between the plaintiff and the Atlas Portland Cement Company, was 11 cents per barrel, and that by reason of the alleged breach of the con-

tract by the defendant, and the compulsory re-sale of the cement by the plaintiff, the plaintiff suffered a loss of 35 cents per barrel. The evidence further shows that the total amount of cement used by the defendant in the construction of the sewer was 5,453 barrels; that the work under the contract with the city was to be completed by January 1, 1908, but owing to weather conditions he was unable to complete such contract by that time, and obtained from the city an extension of the time. On July 6, 1907, appellee wrote appellant a letter (Exhibit 17) cancelling his order, assigning various reasons therefor. July 9, 1907, appellant replied by letter (Exhibit 18) denying that the reasons assigned for cancellation existed, and concluding as follows:

"We have been ready, able and willing at all times to comply with this contract and had the same examined and are advised that it is good in form and substance, and that we are secure in our rights. We, therefore, beg to inform you that the material named and specified in this contract will be furnished you according to the terms and effect of the same and that a failure, neglect or refusal upon your part to comply with the same will be met in the first instance by prompt measures to enforce our rights. We trust you will govern yourself accordingly."

The questions presented by the record are, first, the construction of the written contract between the parties, which it is agreed consists of the three instruments hereinbefore set out, and second, does the evidence offered in behalf of the plaintiff establish the averment of the declaration of the plaintiff's readiness and willingness to furnish and deliver the cement contracted for within the time when the same was to be delivered, as alleged in the first count, its readiness and willingness and offer to deliver alleged in the second count, and its readiness and willingness to deliver and its request upon the defendant to accept the same, as alleged in the third count. It is contended by appellant that the effect of the use of the word "es-

timated'' in the phrase of the order, ''Quantity estimated 5000 bbls.'' is to constitute an order for 5000 barrels, while appellee contends that a fair and reasonable interpretation of the writings, when considered together, warrants the construction indicated by his notice of special defense, *i. e.* that the contract was but to furnish appellee such cement as he might use upon his sewer work in the city of Decatur during the season of 1907. We are of opinion that the words ''concrete sewer'' do not create an ambiguity as to the quantity of cement ordered, and should be treated as merely descriptive, and not controlling, and that the word ''estimated'' in the connection used, is equivalent to ''about'' or ''approximately,'' which words are by the greater weight of authority, especially by the following cases, held to mean the number or quantity named less slight or immaterial deviation in weight or count due to usual or ordinary causes which prevent an accurate estimate, and that a contract containing such or similar expressions should be regarded as ''an absolute contract for a specific quantity within reasonable limits.'' Cabot v. Winsor, 1 Allen 546; Bourne v. Seymour, 16 C. B. 337; Shickle v. Chouteau, 10 Mo. App. 241, affirmed 84 Mo. 161. Our conclusion is, therefore, that the writings in question constituted an order for 5000 barrels of cement to be delivered to appellee as demanded on or before January 1, 1908, and that he was legally bound under such a contract to accept and pay for that quantity.

Appellee further contends that before a recovery can be had for the breach alleged in the declaration, the evidence must establish that the appellant company was ready and willing to deliver the balance of the cement at any time prior to January 1, 1908, or that it tendered and offered to deliver it during the same period, or that it often requested appellee to accept and pay for it, that appellee had knowledge of this readiness to deliver, and when the tender was brought

home to him, or after he had received such requests for acceptance of the balance of the cement, he refused to accept and pay for the same. While the record fails to disclose that prior to January 1, 1908, any tender or offer was made by appellant to deliver the balance of the cement due under the contract, or that it requested appellee to accept and pay for the same, as alleged in the second count of the declaration, we think it does sufficiently appear from testimony of Mr. Parke and the letter, Exhibit 18, referred to, that appellant was ready and willing to furnish and deliver the cement contracted for within the time the same was to be delivered, as alleged in the first and third counts. In the absence of proof to the contrary, we are disposed to hold that appellant performed its part of the agreement as averred in the declaration.

Under the foregoing views, the trial court erred in directing a verdict for the appellee, and the judgment based thereon must be reversed and the cause remanded.

*Reversed and remanded.*