## John S. Townsend, Plaintiff in Error, v. The Equitable Life Assurance Society of the United States, Defendant in Error.

### Gen. No. 18,183.

1. ACCOUNTS, § 19*—*when sustaining demurrer to bill for an accounting not an abuse of trial court's discretion.* On bill in equity for a discovery and an accounting of amount due on a Tontine policy of insurance alleging that the accounts are intricate and complicated, requiring the skill of an expert accountant to audit them, action of court in sustaining a demurrer to the bill on ground that there is an adequate remedy at law *held* not an abuse of discretion, there being no specific or definite allegations of fraud nor of inequitable distribution or disposition of the assets involved in the contract between the complainant and the insurance company, and the bill not being strictly a bill for discovery.

2. TRUSTS, § 263*—*when bill does not lie to compel accounting of amount due on insurance policy.* A life insurance society is not a trustee of a tontine fund so that the insured may maintain a bill in equity to compel an accounting for its administration on the theory of a trust relation existing between the company and the policy holders.

3. DISCOVERY, § 7*—*sufficiency of bill.* A bill is not strictly and merely a bill for discovery where it waives an answer under oath.

4. PRODUCTION OF BOOKS AND PAPERS, § 3*—*proceedings in which production may be required.* In actions at law as well as in equity, the parties may, upon motion, be required to produce books and writings in their possession or power which contain evidence pertinent to the issue.

Error to the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the March term, 1912. Affirmed. Opinion filed November 24, 1913.

**Statement by the Court.** John S. Townsend, the complainant below and plaintiff in error here, who was a policy holder in The Equitable Life Assurance Society of the United States, brought a bill in equity (afterwards amended) in the Superior Court of Cook County against that corporation November 22, 1909. To reverse a decree sustaining a general demurrer to the amended bill and dismissing it at complainant's

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

costs after his election to stand by it, entered by said Superior Court November 22, 1911, this writ of error is prosecuted.

The policy is numbered 248,178, dated September 4, 1892, and recites that in consideration of twenty annual payments of $290.90 each The Equitable Life Assurance Society "promises to pay to John S. Townsend, his executors, administrators or assigns, the sum of ten thousand dollars, (any indebtedness to the Society on account of this contract to be first deducted therefrom) at the office of the Society in the city of New York within sixty days after satisfactory proofs of the death of said John S. Townsend of Chicago, in the County of Cook, State of Illinois, shall have been furnished to the Society at its said office."

After stating in a succeeding paragraph the conditions under which the policy shall be incontestable after three years from date, the policy proceeds:

"This policy is issued and accepted upon the condition that the provisions and requirements, printed or written by the Society upon the back of this policy are acepted by the assured as part of this contract as fully as if they were printed at length over the signatures hereto affixed."

Following the signatures for the Company is the provision:

"No person except the President, Vice-President, Actuary, Secretary or Assistant Secretary is authorized to make, alter or discharge contracts or waive forfeitures."

Printed on the left side of the policy are these statements among others:

"1.   That this policy is issued under the Tontine Savings Fund Plan, the particulars of which are as follows:

2.   That the tontine dividend period for this policy shall be completed on the fourth day of September in the year 1902.

3.   That no dividend shall be allowed or paid upon this policy unless the person whose life is hereby assured shall survive the completion of its tontine divi-

dend period as aforesaid and unless this policy shall
be then in force.

4. That all surplus or profits derived from such
policies on the Tontine Savings Fund Assurance Plan
as shall not be in force at the date of the completion
of their respective tontine dividend periods shall be
apportioned equitably among such policies as shall
complete their tontine dividend periods.

5. That upon the completion of the tontine dividend
period on September 4, 1902, provided this policy shall
not have been terminated previously by lapse or death,
the said John S. Townsend shall have the option either
*first, to withdraw in cash this policy's entire share of
the assets, i. e. the accumulated reserve, which shall be
four thousand four hundred and forty-seven and
60/100 dollars and in addition thereto the surplus ap-
portioned by this Society to this policy;* secondly, to
convert the same into a paid up policy for an equiva-
lent amount, provided always that if this amount of
said paid up policy shall exceed the original amount
of the assurance a satisfactory certificate of good
health from one of the Society's medical examiners
shall be required; thirdly, to continue the assurance
for the original amount and apply the entire tontine
dividend to the purchase of an annuity, which together
with the annual dividend on this policy shall be paid
in cash to said John S. Townsend or assigns; or,
fourthly, to withdraw in cash the share of the accumu-
lated surplus apportioned by said Society to this policy
and continue the policy in force on the ordinary plan.

6. That previous to the completion of its tontine
dividend period this policy can have no surrender
value in cash or in a paid up policy.

  \*    \*    \*    \*    \*    \*    \*

8. After the completion of the tontine dividend
period while this policy shall remain in force it shall
be entitled to all the rights and privileges of ordinary
policies of the same age and kind.

  \*    \*    \*    \*    \*    \*    \*    \*

13. The contract between the parties hereto is
completely set forth in this policy and the applica-
tion therefor, taken together, and none of its terms

can be modified nor any forfeiture under it waived, except by an agreement in writing signed by the President, Vice-President, Actuary, Secretary or Assistant Secretary of the Society, whose authority for this purpose will not be delegated.''

We have placed the clause in the 5th paragraph particularly involved in the present litigation in italics.

According to the allegations of the bill, upon the maturity of said policy on September 4, 1902, Townsend elected to withdraw in cash the entire amount due him under said policy, and thereafter so notified the defendant Company, and the said Assurance Society, through its President, on May 7, 1906, notified him that the cash surrender value of the policy was $7,324.80. The implications of the bill are that the Society was willing to pay the complainant this amount but no more; that the complainant refused to accept this amount as the sum due him; that in consequence no settlement nor any payment was made, and this bill in chancery was filed, which asks answers to eleven special interrogatories concerning the number issued of policies of the class to which the one here involved belonged, the number of lapses, surrenders, deaths and payment connected with said class, profits, income and expenses of the Society so far as they relate to the class of policies to which No. 248,178 belongs, and closes with the prayer:

''That an accounting may be taken under the direction of this Honorable Court of all and every the dealings and transactions of said Assurance Society which have any bearing or relation to the full adjustment of the claim of your orator upon the policy aforesaid, and that the respective rights of your orator and the said Assurance Society under said policy may be ascertained and that the defendant The Equitable Life Assurance Society of the United States may be decreed to pay to your orator whatever amount shall appear upon such accounting to be due to the complainant from the said defendant.''

As further ground for calling on the court by this bill for the decree prayed, the complainant sets up in his bill that the defendant is a foreign corporation engaged in the business of life insurance and licensed to do business in Illinois; that a general agent of the defendant solicited him to take the policy in question and to that end placed before him a written document which contained the following statements:

"The Tontine Savings Fund plan of assurance was devised by The Equitable Life Assurance Society of the United States.

In order to secure a policy on this plan with its special advantages, dividends and surrender values must be waived during the Tontine period. All profits are accumulated for the benefit of those who survive and whose policies are in force upon the completion of the Tontine period. Many companies allow no cash values for surrendered or lapsed policies, while the rest make it a rule to give in cash only a fractional part of the reserve. ('The Reserve' is the full value of a policy as determined by law). One of the chief advantages of the Tontine Savings Fund Policy of the Equitable is, that the Society guarantees to give the policy holder at the end of the Tontine period the entire Reserve in cash if he chooses to withdraw it, and the exact amount of this Reserve may be written in the policy when issued. *The surplus is guaranteed as well as the Reserve, but its exact amount cannot be determined in advance. Res. $4,076.00.*

The figures entered on the blank on the other side of this sheet are taken from the Tontine Blue Book of Estimates now in use by the Equitable Life Assurance Society of the United States. *While it is to be understood that these calculations are simply estimates,* it is to be remembered also that they are based upon the actual experience of the Society for a number of years. *Even should the results fall slightly below the estimates, it is believed that they will be more favorable than the results now shown by any company on any other form of policy.*

                    Frank H. Rood, General Agent.

See estimates other side."

On the other side of the same sheet, among other things, were these:

"Estimate based on actual experience.  See explanation other side.  Amount of Policy, $10,000.  Tontine period, 20 years.  Age 28.  Annual premium, $290.90.

Total premiums paid in 20 years........$5,818.00

At the end of the Tontine period you will have the privilege of choosing any one of the following methods of settlement:

1.   TOTAL CASH VALUE.
   Cash value at end of Tontine period estimated at $10,430.00.

2.   PAID UP POLICY payable at death estimated at $25,600.

3.   ANNUITY.
   *      *      *      *      *

   Estimated annuity ......................$518
   *      *      *      *      *
   *      *      *      *      *

4.   SURPLUS IN CASH.
   Withdraw the accumulated surplus (or profits) in cash, estimated at $5,982.00.
   The original policy being now paid up for $10,000, with annual dividends.

Dated at Chicago, Ill., Aug. 30, 1882.

                              Frank H. Hood,
                                   Genl. Agent."

The complainant says he relied on the representations thus made in consenting to take the policy before described; that he duly paid the premium mentioned for twenty years successively; that after electing on September 4, 1902, to withdraw in cash the entire amount due him under said policy, and after so notifying the defendant Society, he from time to time has demanded an accounting from it for the purpose of ascertaining the exact amount due to him under the policy, but that the said Assurance Society has declined to account to him in any way or to furnish any data to him from which the amount due to him upon the said policy from the said Assurance Society, in-

cluding the surplus or profits, could be ascertained. This clause then follows in the bill:

"And your orator further avers that the information and data relating to this particular, to-wit, pertaining to policies issued by said defendant under said Tontine plan, is wholly and exclusively within the knowledge of the defendant and that this complainant has no means whereby the same may be obtained save from the said defendant; that the accounts of said defendant relating to the aforesaid Tontine policy fund and plan are intricate and complicated and would require the skill of expert accountants to audit same."

The complainant further asserts that the figure of $7,324.80 named by the defendant as the sum due him is not correct; that the amount should be at least $10,000; that said amount of $7,324.80 is wholly in conflict with the original statement issued to him by said Assurance Society as before set forth; that the said defendant has failed to make an equitable distribution of the tontine fund among the surviving policy holders and has from time to time made different settlements upon a different basis with different holders of tontine policies, making discriminations between one and another.

Appended to the bill as an exhibit and made a part thereof is the charter of the defendant Society. The only parts of which that seem pertinent to mention except article III and that part of article VI hereinafter quoted in full, are provisions that the corporate powers of the Society shall be vested in a Board of Directors and shall be exercised by them, and by such officers and agents as they may appoint and empower; that said directors shall have power to enact by-laws, rules and regulations for the government of the officers and agents and for the management of the affairs of the Company and amend or repeal such by-laws, rules and regulations at pleasure; that the directors may determine the rates of premiums and the amounts to be insured on any one life and the terms of such insurance, and shall have power to purchase

for the benefit of the Company any policies of insurance, dividends or other obligations issued by the Company.

Article III is: "The capital of said Company shall be one hundred thousand dollars in cash, divided into one thousand shares of one hundred dollars each, which shall be personal property transferable only on the books of the Company in conformity with its by-laws. The holders of the said capital stock may receive a semi-annual dividend on the stock so held by them, not to exceed three and one-half per cent. of the same; such dividends to be paid at the times and in the manner designated by the Directors of said Company. *The earnings and receipts of said Company over and above the dividends, losses and expenses shall be accumulated.*"

Article VI with the exception of its last clause, not pertinent hereto is:

"The insurance business of the Company shall be conducted upon the mutual plan. All premiums shall be payable in cash. In case any policy holder shall omit to pay any premium due from him to the Company, or violate any other condition of the policy of insurance, the Board of Directors may forfeit his policy and apply all previous payments to the benefit of the Company.

The officers of the Company, within sixty days from the expiration of the first five years from Dec. 31, 1859, and within the first sixty days of every subsequent period of five years, shall cause a balance to be struck of the affairs of the Company, which shall exhibit its assets and liabilities both present and contingent, and also the net surplus after deducting a sufficient amount to cover all outstanding risks and other obligations. *Each policy holder shall be credited with an equitable share of the said surplus.* Such equitable share after being ascertained shall be applied to the purchase of an additional amount of insurance (payable at death or with the policy itself) expressing the reversionary value of such equitable share at such interest as the Directors may designate, or if any policy holder shall so direct, such equitable share of surplus shall be ap-

plied to the purchase of annuity at such rates of interest as the Directors shall designate to be applied in the reduction of his or her future premiums. In case of death, the amount standing to the credit of the party insured, at the last preceding striking of balance as aforesaid, shall be paid over to the person entitled to receive the same, and the proportion of surplus equitably belonging to him or her at the next subsequent striking of balance shall also be paid when the same shall have been ascertained and declared.

In case of the death of any party insured prior to passing any period for striking of balance as aforesaid, the Board of Directors may provide what (if any) share of such surplus shall be paid to such person." The italics as before are our own.

The ground taken by the defendant in support of the general demurrer below and of the decree sustaining the demurrer and dismissing the bill, is that on which the court below proceeded in rendering the decree, namely, that there is no case made by the allegations of the bill for the interference of equity, the remedy of the complainant on his contract of insurance being at law, so far as the situation is shown by those allegations.

The complainant relies for reversal on the positions that equity has jurisdiction:

*First,* Because of complex and intricate accounts, the data of which are exclusively within the possession and control of the defendant.

*Second,* Because the amount sued for is recoverable from a particular fund, and equity can grant more adequate relief than a court of law;

*Third,* Because a trust relation exists in this case between the complainant and the defendant Society.

JAMES HAMILTON LEWIS and ELIJAH N. ZOLINE, for plaintiff in error; MORRIS K. LEVINSON, of counsel.

MAYER, MEYER, AUSTRIAN & PLATT of Chicago and ALEXANDER & GREEN of New York, for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

We have given very fully in the statement pre-fixed hereto the contentions of the complainant and the allegations of his bill, including its exhibits, on which those contentions rest. We have done this be-cause the question involved is important and not free from difficulty and the necessarily limited discussion of it which we can give could hardly be well under-stood in all its bearings without reference to these con-tentions and allegations.

We do not think the statement in the "prospectus" or proposition put before the complainant as an in-ducement to him to take the policy is of importance. The policy is complete and speaks for itself. It is a written contract between the complainant and the de-fendant and it is especially provided therein that the application and the policy completely express the con-tract. Some emphasis, however, is placed by com-plainant on the fact that the "prospectus" signed by Rood, the general agent, declared that the "estimated cash value" of the proposed policy would be at the end of the Tontine period $10,430, and the estimated "surplus in cash" $5,982, a sum which added to the "Reserve" named, $4,076, would make an amount slightly less than this "estimated cash value." But it is expressly stated in the same paper that "the cal-culations are simply estimates," and that the exact amount of the surplus cannot be determined in ad-vance. The language of the New York Court of Ap-peals in *Avery v. Equitable Life Assur. Soc.*, 117 N. Y. 451, in this regard is not unreasonable in our opinion, nor does it differ from what we understand the law of Illinois to be. The Court says concerning this very class of policies:

"The assured was bound to know that the liability of the company on that plan of insurance was contin-gent upon several elements and indeterminable in ad-

vance.  *  *  *  Their statements of what the as-
sured might possibly gain under that plan do not
amount to misrepresentation, and if the assured ac-
cepted the policy relying upon them and the result
is not as supposed or estimated, that presents no
ground for relief.''

The fact that in a case cited by plaintiff in error
(Parke & Son Co. v. Thompson, 159 Ill. App. 187)
involving an order for a certain number of barrels of
cement, the word ''estimated'' was held by the Ap-
pellate Court of the Third District of this State to
mean ''about'' or ''approximately,'' throws no light,
in our opinion, on the obligation of the defendant in the
case at bar, nor differentiates our law from that of
New York.

But if the suggestion of the complainant as to the
effect of the expressions involving ''estimates'' were
better founded, it would have no relevancy to the
question which is actually before us.  That question
is not whether $7,324.80 is all that is due to complain-
ant under the contract of insurance which he holds,
but whether a suit on that contract is so cognizable
in equity that a court of equity erred in refusing to
entertain the bill in this case and thus relegating the
complainant to a suit at law.  We have no disposition
to hold (indeed we do not think the question is before
us) that the holder of a Tontine policy in the Equi-
table Life Assurance Society or any other company is
obliged, without remedy, to take whatever may be
offered to him by the company or its directors, not-
withstanding grounds of dissatisfaction he may con-
ceive himself to have.

Nor do we think that the New York and Federal
decisions involving the rights and obligations of the
parties to this form of policy so hold.  The importance
of these decisions is respectively emphasized and min-
imized by the defendant and complainant herein, but
they do not deny recourse to the courts if a policy
holder is dissatisfied with a settlement offered him,

but deal with the two questions, *First*:  What must be considered a *prima facie* case of compliance by the company with its obligations, and of what nature and how definite must be the allegations and proof of the policy holder to overcome it?  And, *Second*:  Is it at common law or at equity that allegations like those in the particular cases decided should be adjudicated?

These two questions were somewhat intermingled in the cases and in the opinions deciding them, and they were not free from difficulty.  But we think they were decided correctly and we shall follow those decisions in the case at bar, as did the court below.

The most obvious, if not the most forceful, of the complainant's arguments against the decision of the Superior Court to dismiss the bill is that a trust relation is made between him and the defendant by the very contract of insurance; that thereby the Equitable Life Assurance Society is made a trustee of complainant's money.  Of course, if this is so, a court of equity can and should supervise the execution of the trust when asked to do so by a bill which alleges its violation.  But we cannot agree to the premise.  The argument of the complainant would prove too much and its fault consists in using the word "trust" in a double sense.  In the more general sense that the word may be used to declare that every borrower holds money lent to him in trust to use it for the purpose for which he declares to the lender that he wanted it, and to repay it when repayment becomes due, with whatever increment or interest has been agreed on, the Equitable Life Assurance Society holds all its money received in premiums on all kinds of policies in trust; but that it does so in the sense in which the term must be used in courts of law and equity has been expressly negatived by the highest tribunal in the United States in *Equitable Life Assur. Soc. v. Brown,* 213 U. S. 25.  "That there is such a trust in the fund mentioned has never been regarded as the law in the

State of New York nor anywhere else, so far as any case has been cited on the subject,'' is the language of Mr. Justice Peckham speaking for the court. ''The fund mentioned'' as the context shows, was the ''so-called surplus,'' ''the moneys of defendant,'' which had ''reached the surplus fund.'' The only difference between ''the fund mentioned'' in the *Brown* case and the fund which complainant herein declares to be a trust fund, is that the former included all ''the surplus'' of the company, that is, the aggregate of the surplus applicable to each class of policies, and the latter ''the surplus or profits derived from policies of the class to which the complainant's policy belonged.'' The whole includes each of its parts and the trust fund theory can no more properly be predicated of one of those parts than of the whole, in our opinion. That it may, however, is the alternative position of the complainant. That the Supreme Court of the United States does not assent to this alternative position is shown by its particular citation in the *Brown* case, of *Uhlman v. New York Life Ins. Co.,* 109 N. Y. 421, wherein the Court of Appeals of New York held it untenable. The Supreme Court says:

''In the *Uhlman* case, *supra,* the plaintiff was the owner of a policy known as a ten year dividend system policy, otherwise a 'tontine plan' policy, which it was averred gave to the holder a special title to the funds derived from the payment of premiums on the policies of that kind and in the particular class to which the policy belonged. The Court of Appeals of New York held that such claim was not well founded, that it could not be said that the defendant is in any sense a trustee of any particular fund for the plaintiff or that it acts as to him and in relation to any such fund in a fiduciary capacity. It has been held that the owner of a policy of insurance even in a mutual company, was in no sense a partner of the corporation which issued the policy, and that the relation between the policy holder and the company was one of contract, measured by the terms of the policy.

The holder of a policy of the nature of that referred to in the *Uhlman* case would be certainly as much entitled to claim that the company was a trustee for the holder as would be this complainant.  Indeed the policy holder in the *Uhlman* case occupied a much stronger position for making the claim than does this complainant, who is the holder of an ordinary life policy with rights to participate in the distribution of the surplus according to methods, etc., adopted by the defendant, as already mentioned.  The claim was, however, denied by the State Court, following the decisions of the New York Courts for many years.  To hold that a trust is proved in this case by virtue of the charter and policy of insurance, is to hold contrary to the decisions of the highest court of the State of New York for a long number of years past, without a single decision the other way in all that time.''

We should undoubtedly be inclined to follow the Supreme Court of the United States (in the absence of any decision to the contrary in the court of last resort in our own State on the question) even if it stood alone in its holding.  It is, however, on the contrary, in accord with the holding of other courts of the United States of the State of New York and of other States in a long line of cases, for example, to cite only a few: *Hunton v. Equitable Life Assur. Soc.,* 45 Fed. 661, first circuit, Colt, J. (a Tontine policy); *Everson v. Equitable Life Assur. Co.,* 68 Fed. 258, third circuit, Buffington, J. (a Tontine policy); affirmed by the Circuit Court of Appeals of the third circuit, after a very full argument against the opinion of the court below, on the same lines taken by the counsel for complainant in the case at bar (18 C. C. A. 251, 71 Fed. 570); *Uhlman v. New York Life Ins. Co.,* 109 N. Y. 421, the N. Y. Court of Appeals (a Tontine policy); *Watts v. Equitable Life Assur. Soc.,* 55 Misc. 454, the Supreme Court of N. Y. Special Term (a Tontine policy); *Hackett v. Equitable Life Assur. Soc.,* 30 Misc. 523, the Supreme Court of New York Special Term (a Tontine policy); *Pierce v. Equitable Life Assur.*

*Soc.,* 145 Mass. 56, the Supreme Judicial Court of Mass. (a Tontine policy.)

It is true that this last case is much relied on by the plaintiff in error because in it the court sustained the jurisdiction of equity. But it did so upon another ground entirely, as we shall point out. As to the precise question we are now discussing, the language of the Court is:

"That the bill brought by the plaintiff cannot be maintained on the ground that he is the beneficiary of a trust fund held by the defendant, which is one of the grounds upon which an account is often ordered, and upon which theory the bill is based, is, we think, reasonably clear. \* \* \*

We proceed to consider, therefore, whether, upon any other ground than that strictly of trust, the bill may be maintained for an account."

The complainant maintains that the contrary is the law of Illinois, and directs our attention to a statement in the Encyclopedia of Pleading and Practice, that in Illinois the Supreme Court holds that the officers of a mutual insurance company are trustees of a Tontine fund, and that this doctrine would seem to include the right of the insured to compel them to account for its administration.

This statement of an encyclopedia is not an authoritative utterance any more than is the more definite statement that precedes it that "A suit in equity against a mutual insurance company is not maintainable on the theory of a trust relation between the company and its policy holders," and the only case which is cited to support the assertion concerning the holding of the Supreme Court of Illinois (*Chicago Mut. Life Indemnity Ass'n v. Hunt,* 127 Ill. 257) does not bear out the complainant's contention. The question in that case was whether an information in chancery by the Attorney General of the State would lie, "to enforce a due administration of the trust reposed *by the corporation* in its officers"—manifestly a very dif-

ferent question from the one presented to us in the case at bar.

But largely on the authority of the Supreme Judicial Court in Massachusetts in *Pierce v. Equitable Life Assur. Soc.*, 145 Mass. 56 (from the opinion in which we have above quoted), the complainant insists that independently of the theory that the fund to be divided between the tontine policy holders is a trust fund, a court of equity should take jurisdiction because an accounting is necessary to secure an adequate remedy, and the accounts are alleged to be intricate and complicated, requiring the skill of expert accountants to audit the same.

Before discussing the law of Illinois in relation to the jurisdiction of equity, when such jurisdiction is asserted merely on the ground of the necessity of such an accounting, it may be well to note the factors which controlled the Massachusetts court in its decision and the extent to which the Federal and New York courts have differed from it. The Massachusetts statute, says the opinion, "gives jurisdiction in equity upon accounts 'when the nature of the account is such that it cannot be conveniently and properly adjusted and settled in an action at law.'" The opinion then goes on to say that in the opinion of the court the accounts are so complicated that they cannot be *conveniently* investigated at common law.

This, in connection with the repudiation of the trust fund theory heretofore quoted, shows that the court places the decision upon the language of the Massachusetts statute, nothing similar to which exists in Illinois.

The opinion, it may be noted, also gives very considerable importance to the *argumentum ab inconvenienti* urged by the Equitable Life Assurance Society, declaring that had the defendant objected originally to the entertainment of the case by the Massachusetts court on the ground of "the great inconvenience

involved in taking such an account at a distance from the State in which its voluminous book and papers are properly kept, such objection would have been worthy of serious consideration.'' Four years later in the Circuit Court of the United States in the District of Massachusetts, the same questions came up in *Hunton v. Equitable Life Assur. Soc.*, 45 Fed. 661, in a suit removed to the Federal court from the State court.

The following excerpts from the opinion of Colt, J., will show the view taken by the Court: ''The question raised by this demurrer is whether a bill in equity will lie for an account against the defendant company for the amount due on a tontine policy, or whether the proper remedy is at law. * * * In this case the complainants being dissatisfied with the amount allowed by the defendant, have brought this bill in equity for an account, and the defendant has demurred, on three grounds: *First,* that the plaintiffs have not stated such a case as entitles them to any relief in equity against the defendant; *second,* that it does not appear that any fiduciary relation subsists between the plaintiffs and defendant, and that, therefore, their cause of action, if any, is cognizable in a court of common law; *third,* that the plaintiffs have not stated such a case as entitles them to demand in equity an account from the defendant.

If this bill can be maintained, it must be on the ground that a trust relationship existed between the parties, or that the account is of such a character that equity jurisdiction attaches. That no trust exists between the assured and the insurance company has been held in *Pierce v. Society,* 145 Mass. 56, and *Bewley v. Society,* 61 How. Pr. 344, and I agree with the reasoning of the court in those cases. I am also of opinion, upon the authority of *Root v. Railway Company,* 105 U. S. 189, that, this being merely a suit for an account, and it not appearing that any other ground of equitable jurisdiction exists, a bill in equity cannot, upon general principles governing the jurisdiction of

courts of equity, be maintained. The plaintiffs rely, in this case, upon a provision of the Public Statutes of Massachusetts, * * * which confers equity jurisdiction in cases where 'the nature of the account is such that it cannot be conveniently and properly adjusted and settled in an action at law.' * * * It is well settled that the equitable jurisdiction of the United States courts cannot be changed by state statute. * * * Demurrer sustained.''

When *Equitable Life Assur. Soc. v. Brown, supra,* was heard and decided by the Supreme Court of the United States in 1909, Mr. Justice Holmes, who, as Judge of the Supreme Court of Massachusetts, had concurred in the opinion in *Pierce v. Equitable Life Assur. Soc., supra,* was a member of the Supreme Court of the United States and concurred in its opinion in the *Brown* case, *supra.* In that case the Court distinctly held a contrary doctrine as to the right of a policy holder to call upon the interposition of a court of equity to order an accounting, and quoted approvingly cases from the courts of New York which hold that under a policy like the present, ''how much of the surplus shall be distributed to the policy holder and how much shall be held for the security of the defendant and its members, is to be decided by the officers and management of the defendant in the exercise of their discretion to distribute, having in mind the present and future business, and in the absence of any allegations of wrongdoing or mistake by them, their determination must be treated as proper and their apportionment of the surplus is to be regarded *prima facie* as equitable.''

The New York courts seem uniformly to approve this same doctrine and the courts of Ontario in the Dominion of Canada also accede to it. *Bain v. Aetna Ins. Co.,* 20 Ont. 6, 11, Canadian L. T. 273.

The theory concerning a life insurance company policy, whether tontine or otherwise, and whether issued by a mutual company or not, which is adopted

by the courts of the greatest authority seems to be that the relation is not a trust but a contractual one, and that if the contract is alleged by the holder to be broken, the burden is on him to prove wherein and how.

The complainant insists, however, that even under this view a court in equity in Illinois should take jurisdiction of the case at bar, on the ground that the bill seeks a discovery and accounting in a matter involving complex and intricate accounts, and cites, as authority that this is the law of Illinois, various cases (*Miller v. Russell*, 224 Ill. 68, and others) which support the contention that a court of equity is justified *in its discretion* in taking jurisdiction where a complex and complicated account is involved, the right to take jurisdiction not depending in such case, it is said, on the entire absence of any remedy at law, but upon the inadequacy and impracticability of such remedy. But it is to be remembered that in the case at bar the question as it comes to us is not whether the court below *in its discretion* would have been *justified in taking jurisdiction* of this bill; it is, whether the court below *in its discretion* was *justified in refusing to take jurisdiction* and in relegating the complainant to his possible remedy at law.

That the court may act in taking or refusing jurisdiction in its discretion in such cases is certainly impliedly if not expressly the doctrine of *Crown Coal & Tow Co. v. Thomas*, 177 Ill. 534, and *Miller v. Russell, supra.*

That in cases like the one at bar seeking an accounting and discovery from an Insurance Company of practically innumerable items at a great distance from its headquarters, without specific or definite allegations of any instances or examples either of fraud or of inequitable distribution or disposition of the assets involved in the contract between the complainant and the Company, the argument from inconvenience

against the interference of equity in the manner prayed, is, although not conclusive, nevertheless forceful and to be considered, many decided cases of high authority recognize; for examples: *Equitable Life Assur. Soc. v. Brown*, 213 U. S. 25, p. 212; *Everson v. Equitable Life Assur. Co.*, 68 Fed. 258; *Pierce v. Equitable Life Assur. Soc.*, 145 Mass. 56.

The bill is not strictly and merely a bill for discovery. It waives an answer under oath, which a bill "for discovery only" may not, under the chancery statute.

The statute concerning "Evidence" provides that in actions at law as well as in equity, upon motion and good and sufficient cause shown and reasonable notice thereof given, parties may be required to produce books or writings in their possession or power which contain evidence pertinent to the issue.

We do not think a case is made by the amended bill, which required the court below to take jurisdiction in equity of the charges of the complainant, or that it abused or exceeded its discretion in sustaining the demurrer and dismissing the bill. The decree is therefore affirmed.

*Affirmed.*