JOHN S. TOWNSEND, Appellant, *vs.* THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellee.

*Opinion filed April 23, 1914—Rehearing denied June 4, 1914.*

1. INSURANCE—*mutual insurance company is not a trustee for the policyholders.* A mutual insurance company is the debtor of a policyholder and not a trustee, and the policyholder is the creditor to the amount determinable by the apportionment of the surplus under a tontine savings plan giving the policyholder a right to the reserve accumulations and to an apportioned surplus in the profits of the company.

2. SAME—*when policy will be enforced according to its terms.* Where a written contract of insurance is sought to be enforced according to its terms and not sought to be set aside for fraud or misrepresentation in procuring it, all prior negotiations and representations will be disregarded.

3. SAME—*when policyholder is not bound by apportionment of the surplus.* Under a provision in a tontine policy that the surplus shall be apportioned equitably among such policies as shall complete their tontine dividend period, a policyholder is not absolutely bound by the insurance company's apportionment.

4. EQUITY—*when bill for discovery and accounting is permissible though remedy at law exists.*  In this State a court of equity has jurisdiction of a bill for discovery and accounting even though the complainant has a remedy at law upon the contract, where the amount of the complainant's claim cannot be ascertained except upon an inspection of books and papers in the possession of the defendant, and the account itself is intricate and complicated, involving transactions about which the defendant, alone, can furnish accurate information.  (*Miller* v. *Russell,* 224 Ill. 68, followed.)

5. CORPORATIONS—*when suit does not involve internal management of affairs of foreign corporation.*  A bill in equity against a foreign insurance corporation by a policyholder to obtain a decree for the payment of money in accordance with his contract with the corporation does not involve the internal management of the affairs of the corporation and is not required to be brought in the State where such corporation is organized.

CARTER, J., dissenting.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

JAMES HAMILTON LEWIS, (ELIJAH N. ZOLINE, of counsel,) for appellant.

MAYER, MEYER, AUSTRIAN & PLATT, and ALEXANDER & GREEN, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Appellate Court having affirmed a decree of the superior court of Cook county dismissing a bill of complaint of John S. Townsend against the Equitable Life Assurance Society of the United States, granted a certificate of importance and the complainant has appealed.

The cause was heard upon a demurrer to an amended bill, which was sustained.  The complainant was the holder of a tontine policy of life insurance, and the object of his amended bill was an accounting from the defendant to as-

263 – 28.

certain whether it had apportioned to the complainant the portion of the surplus to which his policy entitled him and for a decree for the amount due on the policy.

The policy was issued on September 4, 1882, and in consideration of the application therefor and of the annual payment of $290.90 during the continuance of the policy or until twenty such payments should have been made, appellee promised to pay to the complainant, his executors, administrators or assigns, $10,000 within sixty days after proof of his death. The following provisions were a part of the policy:

"1. That this policy is issued under the tontine savings fund plan, the particulars of which are as follows:

"2. That the tontine dividend period for this policy shall be completed on the fourth day of September, in the year 1902.

"3. That no dividend shall be allowed or paid upon this policy unless the person whose life is hereby assured shall survive the completion of its tontine dividend period, as aforesaid, and unless this policy shall be then in force.

"4. That all surplus or profits derived from such policies on the tontine savings fund assurance plan as shall not be in force at the date of the completion of their respective tontine dividend periods shall be apportioned equitably among such policies as shall complete their tontine dividend periods.

"5. That upon the completion of the tontine dividend period on September 4, 1902, provided this policy shall not have terminated previously by lapse or death, the said John S. Townsend shall have the option either, first, to withdraw in cash this policy's entire share of the assets, *i. e.,* the accumulated reserve, which shall be $4447.60, and in addition thereto the surplus apportioned by this society to this policy." Three other options for the settlement of the policy were provided for.

The tontine dividend period expired. The complainant elected to withdraw in cash the entire amount due him under his policy, and demanded, and from time to time has demanded, an acounting from the defendant for the purpose of ascertaining the exact amount due him under the policy, but the defendant has declined to account, though the information and data pertaining to policies issued under the said tontine plan are within the exclusive knowledge of the defendant and the complainant has no means of obtaining such information except from the defendant, and the defendant's accounts relating to the said tontine policy fund and plan are intricate and complicated and would require the skill of expert accountants to audit them.

The amended bill alleged that after repeated requests for an accounting the defendant, on May 7, 1906, notified the complainant that the cash surrender value of his policy was $7324.80, but has wholly refused and neglected to furnish any information as to the transactions of the defendant and the profits which should be apportioned to the complainant's policy during the tontine period of twenty years, or any facts upon which its figures are based; that the amount of $7324.80 is incorrect; that the amount due upon the said policy should be at least $10,000; that the defendant failed to make an equitable distribution of the tontine fund among the surviving policyholders, and has from time to time made different settlements upon different bases with different tontine policyholders of the same class. 'A copy of the complainant's policy was attached as an exhibit and made a part of the bill, as well as a copy of the defendant's charter. The latter fixed the capital stock of the corporation at $100,000, authorized semi-annual dividends not exceeding three and one-half per cent of the stock, and required the earnings and receipts of the company, above the dividends, losses and expenses, to be accumulated. It also provided that the insurance business of the company should be conducted upon the mutual plan;

that the officers of the company, within sixty days from the expiration of the first five years from December 31, 1859, and within the first sixty days of every subsequent period of five years, should cause a balance to be struck of the affairs of the company which should exhibit its assets and liabilities, both present and contingent, and also the net surplus after deducting a sufficient amount to cover all outstanding risks and other obligations, and that each policyholder should be credited with an equitable share of the said surplus. The bill prayed for an answer not under oath, an account under the direction of the court and a decree for the amount due the complainant. An answer was also prayed to eleven special interrogatories concerning the number, amounts and dates of tontine policies issued, lapsed, surrendered and paid during the tontine dividend period of complainant's policy; the number of deaths of policyholders; the number of policies remaining in force; the names and addresses of policyholders; the amount paid in premiums; the amount of profits of the defendant; the amount of gross income and expenses, and a general account of amounts paid out to agents and officers of the defendant and for expenses,—all, in so far as these questions relate to the class of policies written, under the tontine savings fund plan to which the complainant's policy belonged.

The amended bill contained certain allegations in regard to a written statement submitted to the complainant before the issue of the policy concerning the tontine savings fund plan of insurance, containing estimates of results said to be based upon actual experience. We regard these allegations as of no importance. The complainant's claim to relief is based upon the contract witnessed by his policy. It is not sought to set aside the contract for any fraud or misrepresentation in procuring it, but to enforce it according to its terms. Prior negotiations or representations can not, therefore, enter into this controversy.

The demurrer was general, and it is argued in support of it that no ground of equitable jurisdiction exists, but that if the complainant has been wronged he has a complete remedy at law.  On the other hand, the complainant contends that a trust relation exists in this case and that the defendant is a trustee for its policyholders, at least as to the surplus or profits from policies of the class to which the complainant's belongs.  The defendant is a corporation having a capital stock, whose affairs are managed by directors who must be stockholders.  Its insurance business must be conducted on the mutual plan, but it must be conducted by the stockholders.  Its policyholders are not members of the corporation but are the corporation's creditors. The money paid for premiums is no more the money of the policyholders than the money deposited in a bank is the money of the depositors.  In either case the money paid or deposited becomes the money of the corporation, and the policyholder or depositor becomes a creditor entitled to payment in accordance with the contract of the corporation. Under this policy the defendant was under no obligation to keep the premiums paid on tontine policies as a separate fund or to invest such premiums or any of its funds in any particular way, but the management of its business and the investment of its funds were committed entirely to its judgment and discretion.  By his policy, if continued in force to the expiration of the tontine dividend period, the complainant is entitled to participate in an equitable apportionment of the surplus derived from tontine policies.  This right he has, not because of the existence of any trust, but because the contract gives it to him.  He is simply a creditor of the defendant, the amount of the debt being determinable by the apportionment of the surplus.  No case has been cited holding that such a trust exists as has been contended for by the complainant, but wherever the question has arisen, so far as the cases have been brought ·to our attention, it has been decided that there is no trust.

(*Equitable Life Assurance Society.* v. *Brown,* 213 U. S. 25; *Uhlman* v. *New York Life Ins. Co.* 109 N. Y. 421; *Greif* v. *Equitable Life Assurance Society,* 160 id. 19; *Pierce* v. *Equitable Life Assurance Society,* 145 Mass. 56.) In *Ellinger* v. *Equitable Life Assurance Society,* 132 Wis. 259, the statement is made that "such reserve funds and surplus funds and profits are held by the defendant in trust for such policyholders, if any, as are entitled to the same." The case was an action on a policy of insurance similar to that involved here, in which the plaintiff made an application, under the statute, for an inspection or sworn copies of all books, data and memoranda showing the reserve fund and accumulated surplus and other funds of the defendant within the period covered by the policy, and showing what portion of said reserve fund and such accumulated surplus and any other funds in the hands of the defendant were proper to be applied upon said policy of insurance. It was held that the plaintiff was entitled to an order for such inspection or sworn copies, but the question of the existence of a trust was not involved or decided and the language quoted was used in argument, only.

Under the policy the complainant had a right, upon the completion of the tontine dividend period on September 4, 1902, to withdraw in cash the accumulated reserve of $4447.60, and, in addition thereto, the surplus apportioned by the defendant to the policy. He was not absolutely bound by the apportionment made by the defendant, for it was expressly provided that the surplus should be apportioned equitably among such policies as should complete their tontine dividend period. There can be no doubt that he might maintain an action at law for the amount thus expressly authorized to be withdrawn. It it insisted, however, that the jurisdiction of equity does not depend upon the existence of a remedy at law but upon the adequacy and practicability of such remedy, and that a court of equity has jurisdiction of a bill for discovery and account-

ing where the amount of the complainant's claim, although based upon a contract, cannot be ascertained except upon an inspection of books and papers in the possession of the defendant, and the account itself is complicated and intricate, involving transactions about which the defendant, alone, can furnish accurate information. This was held to be the settled law in this State in the case of *Miller* v. *Russell*, 224 Ill. 68. The facts in this case come clearly within the rule. The transactions from which the amount due the complainant must be ascertained are exclusively within the defendant's knowledge. The account must involve the number, dates and amounts of tontine policies issued; the number terminated by death, lapse or otherwise, and the amount paid on account of them; the amounts of premiums and other items necessary to the ascertainment of the surplus, and the equitable apportionment of it among the persistent policies. Only by an inspection of the books and papers of the defendant in its possession can the items be ascertained. With all these items in evidence it would be difficult, if not impracticable, to present them to a jury in such a manner as to enable the jurors satisfactorily to determine the amount due. In *Pierce* v. *Equitable Life Assurance Society, supra,* it is said that where an account is complicated, so that a full examination and settlement of previous accounts and transactions or methods of business are necessary and when the whole matter is entirely within the knowledge of the defendant, it cannot be so conveniently or accurately investigated at common law as in equity. In that case, and in *Peters* v. *Equitable Life Assurance Society,* 196 Mass. 143, it was held that a bill for an accountting was maintainable by the holder of a policy similar to the one involved here against this defendant. It is true that in Massachusetts the statute gave jurisdiction in equity upon accounts "when the nature of the account is such that it cannot be conveniently and properly adjusted and settled in an action at law." We have no such statute, but, as

has been stated, jurisdiction in equity exists in this State, independent of statute, of accounts which are intricate and involved and dependent upon books and papers in the possession of the defendant, who alone can furnish accurate information in regard to them.

It is insisted that a bill for an accounting of this character will lie only in the State where the defendant company is organized, as the courts will not interfere with the internal management of a foreign corporation. It is a general rule that the courts of one State will not exercise the power of deciding controversies relating merely to the internal management of the affairs of a corporation organized under the laws of another State or of determining rights dependent upon such management. (*Babcock* v. *Farwell,* 245 Ill. 14.) No such question is involved here. This is a suit by a creditor against a debtor corporation for a sum of money due on a contract. There is no question of the relation between the corporation and any of its members, of violation by the corporation of the law of its existence, or of wrongs requiring the exercise of visitorial powers for their redress. The final object of the bill is a decree for the payment of money due on a contract, and the suit no more interferes with the internal management of the corporation than would a suit at law on the same contract.

The judgment of the Appellate Court and the decree of the superior court of Cook county are reversed and the cause is remanded to the superior court, with directions to overrule the demurrer.

*Reversed and remanded; with directions.*

Mr. JUSTICE CARTER, dissenting.